**UNITED STATES, Appellee,**

v.

**Lieutenant Colonel Frederick B. BYARD, 248–72–3308, United States Army, Appellant.**

**CM 449201.**

U.S. Army Court of Military Review.

17 Nov. 1989.

For appellant: Lieutenant Colonel Joel D. Miller, JAGC, Lieutenant Colonel Russell S. Estey, JAGC, Major Eric T. Franzen, JAGC, Captain Keith W. Sickendick, JAGC (on brief).

For appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Kathryn F. Forrester, JAGC, Captain Margaret A. Schuyler, JAGC, Captain Carlton L. Jackson, JAGC Captain Mark E. Frye, JAGC (on brief).

Before GILLEY, CARMICHAEL and WERNER Appellate Military Judges.

**OPINION OF THE COURT ON RECONSIDERATION**

GILLEY, Senior Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial of three specifications of larceny, four specifications of making a false claim, and one specification of false swearing, violations of Articles 121, 132, and 134 of the Uniform Code of Military Justice, 10 U.S.C.

§§ 921, 932, and 934 (1982). His approved sentence consists of confinement for 18 months, forfeiture of $1,000.00 pay per month for 48 months, and a fine of $5,000.00. We issued an opinion in this case on 11 October 1989. On our own motion we withdrew that opinion to consider the issue discussed at Roman Numeral III in this opinion.

On appeal, he contends, pertinently, that he was denied the right to speedy trial on the larceny and false claim offenses as guaranteed by Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial [hereinafter R.C.M. or Rule for Courts–Martial] 707. He also contends that his conviction for false swearing was based upon a charge unsworn, uninvestigated and not referred to court-martial. We find that the appellant was denied a speedy trial by the Government's failure to comply with the 120–day provision of Rule for Courts Martial 707(a).[1] We also find that the appellant's conviction for false swearing is fatally defective.

### Speedy Trial

### I

On 9 August 1985, the appellant was notified of the preferral of charges.[2] On 19 March 1986, the appellant moved for dismissal of the charges on grounds that the Government had failed to comply with the 120–day speedy trial rule. On 20 March, the military judge entered findings excluding various periods of delay pursuant to Rule for Courts–Martial 707(c)[3] and charged the Government with 110 days of delay on the speedy trial clock as of 18 March. The appellant's motion for dismissal pursuant to Rule for Courts–Martial 707(e)[4] was denied.

On 21 March 1986, the Government moved for a continuance until the completion of trial in a related case, *United States v. Longhofer*.[5] As basis for the continuance, the Government stated:

> [T]he government is in the process now of collecting bank records which it could not rectifier [sic] get. The government would request a continuance until the close of the Longhofer case. At that time we should have substantially all of the bank records and I will know exactly how long it will take my auditors to set up the spreadsheets just to explain what the government still has to do with respect to [appellant's] case.

Over defense objection, the military judge granted the continuance and entered an advisory ruling that the period would be excluded pursuant to Rule for Courts–Martial 707(c)(5)(A). *See* note 5, *infra*. The military judge made no findings of fact. A docket date for trial of appellant's case had not been set at that time.

On 19 May 1986, the appellant again moved for dismissal of all charges for noncompliance with the 120–day speedy trial requirement. The Government argued in part that the period 22 March 1986 through 18 May 1986 should be excluded pursuant to Rule for Courts–Martial 707(c)(5).[6] Dur-

---

1. R.C.M. 707(a) provides that an accused "shall be brought to trial within 120 days" of notice to the accused of preferral of charges.

2. The appellant's convictions for larceny and false claims were based upon charges included within this charge sheet. The remaining conviction for false swearing was based on an additional charge of perjury which was preferred on 21 January 1986. This latter charge was not subject to dismissal for speedy trial because the appellant was brought to trial within 120 days of preferral.

3. R.C.M. 707(c) sets forth various events and conditions, the accountability for which will not be charged to the Government.

4. R.C.M. 707(e) provides that charges "shall be dismissed" for noncompliance with the 120–day requirement of R.C.M. 707(a).

5. (A.C.M.R. 30 June 1988) (unpub.), *aff'd,* 29 M.J. 22 (C.M.A.1989).

6. R.C.M. 707(c)(5) permits exclusion of delays requested by the Government if: first, substantial evidence is unavailable and necessary and the Government has exercised due diligence to obtain the evidence and there are grounds to believe that the evidence will be available within a reasonable time, R.C.M. 707(c)(5)(A); or, second, additional time for preparation of the Government case is justified because of the exceptional circumstances of the case, R.C.M. 707(c)(5)(B).

ing a hearing on the motion, Captain (CPT) M., the Government counsel who had made the motion for continuance, testified that the financial records sought by the Government were essential to a successful prosecution of the case and that it had acted with due diligence in issuing subpoenas on 5 March 1986 to obtain the records. The military judge inquired why the Government could not have sooner obtained the records. CPT M. testified that, although he had been attempting since August of 1985 to obtain these records, the appellant had refused to consent to their release, the United States Attorney had refused to issue subpoenas on the prosecutors' behalf, and the financial institutions refused to release the records without either appellant's consent or a court order. CPT M. represented to the military judge that the trial court and prosecutors had no power to issue a subpoena prior to referral on 28 February and stated under oath: "The government is aware of no other mechanism for getting those records." The Government offered no alternative basis for excluding this period of delay.

The military judge accepted CPT M.'s representation that the Government lacked subpoena power prior to referral of charges and found that the prosecution had exercised its subpoena opportunity with due diligence "from the time they had subpoena power." The military judge also accepted the Government's representation that the evidence sought was essential to its case. In accordance with these findings, the military judge excluded 58 days from Government accountability for the period of delay from 22 March 1986 through 18 May 1986 and denied the defense's speedy trial motion.

On 30 August 1988, this court ordered a limited evidentiary hearing on various questions of fact arising from the power of the Department of Defense Inspector General (DOD IG) to issue subpoenas pursuant to the Inspector General Act of 1978, 5 U.S.C.App. 3 sec. 6(a)(4) (1982). At that hearing, the Government conceded that the DOD IG had the power to issue subpoenas on behalf of the Government prior to the time of referral.[7] The evidence of record reveals that, between September 1983 and 21 March 1986, the CID had obtained 43 DOD IG subpoenas, the Naval Investigative Service had obtained 89 subpoenas, and the Air Force Office of Special Investigations had obtained 43 subpoenas.

The military judge who conducted the evidentiary hearing found that the trial team had actual knowledge of the DOD IG subpoena power no later than December 1985. He further found that the DOD IG subpoena power was a feasible means to obtain sooner the records sought by the Government, but that the trial team made an affirmative decision not to use the DOD IG subpoena power to obtain the records. Finally, the military judge found that Major (MAJ) M.[8] intentionally failed to apprise the military judge in the appellant's case of the existence of the DOD IG subpoena power "because to do so risked losing [this case] on speedy trial issues."[9]

7. The Inspector General's Act had been implemented by Department of Defense Directive 5106.1 on 14 March 1983. The DOD IG had sent a policy memorandum concerning the use of DOD IG subpoenas to the Secretary of the Army and to the United States Army Criminal Investigation Command during September 1983. In November 1983, the Army Criminal Investigation Command published a letter of instruction to its regional offices which provided a "detailed explanation of the nature and use" of the DOD IG subpoena.

8. CPT M. was promoted at some time following the trial.

9. During the hearing, MAJ M. explained that he told the trial judge that he knew of no other means of compelling production "because nobody asked about it" and because he had "in [his] mind, disclosed everything to the judge that [he had] needed to"; he testified that it did not "occur" to him to him to reveal "infeasible, or unreasonable or impractical methods."

MAJ M. attempted to justify his failure by testifying that he thought the use of DOD IG subpoenas would have been ethically "inappropriate" because there was no DOD IG investigation pending, that he "was not aware that DOD IG subpoenas could be used in connection with criminal matters," and that he thought that the use of such subpoenas would "lend some credence to notions that there was, perhaps, some sort of unlawful command influence" involved in the prosecution. MAJ M. testified that his superiors had advised him that "we wouldn't be

## II

■ When the Government fails to bring an accused to trial within 120 days, it has the burden of proving its entitlement to exclusions sufficient to bring the case within the 120–day rule of Rule for Courts–Martial 707. *United States v. Cook,* 27 M.J. 212 (C.M.A.1988). Rule for Courts–Martial 707(c)(5)(A) permits exclusion of delays caused by the temporary unavailability of evidence only if the Government has exercised due diligence to obtain the evidence. Rule for Courts–Martial 707(c)(5)(B) permits exclusion only when additional time to prepare the Government's case is justified by exceptional circumstances.

## A

■ The Government's failure to utilize the DOD IG subpoena power to obtain the records sought negates the predicate of due diligence required by Rule for Courts–Martial 707(c)(5)(A) regardless whether the trial team had actual knowledge of its existence.[10] The burden of establishing this predicate lies with the Government. *See*

*United States v. McCallister,* 24 M.J. 881, 889 (A.C.M.R.1987), *aff'd,* 27 M.J. 138 (C.M.A.1988). The trial team's ignorance of the availability of DOD IG subpoenas prior to December 1985, even if "honest and reasonable," affords no basis for concluding that the Government exercised due diligence.[11] The Government's ignorance of the availability of DOD IG subpoenas constitutes negligence in itself. Further, the Government's decision that DOD IG subpoenas were not "feasible" after learning of their availability was simply a tactical decision not to pursue this alternative means of obtaining .the evidence sought. The evidence of record indicates that the Government's decision was premised upon a calculated estimate of the time required for referral balanced against its desire to avoid involving the Office of the Department of Defense Inspector General and its desire to avoid the requirements of the Right to Financial Privacy Act of 1978.[12] The Government has failed to establish that it was foreclosed in law or in fact from utilizing this alternative.[13] Therefore, although this may have been a reasonable tactical decision, the Government's decision

using—that we could not use" the DOD IG subpoena.

In a supplemental brief, the Government contends that the military judge erred in finding that MAJ M.'s representation to the trial judge was made in bad faith and argues that MAJ M. had "a good faith belief that appellant's bank records could *not* be obtained by means of DOD IG subpoena." We reject the Government's argument and adopt the findings of the military judge. In doing so, we do not rely solely on the military judge's assessment of MAJ M.'s credibility; MAJ M. testified at the hearing that the DOD IG subpoena was an alternative and that he had, in fact, requested permission to use the DOD IG subpoena to obtain the records.

10. Nevertheless, we agree with the hearing judge that the trial team knew of its existence yet deliberately declined to exercise this alternative avenue of obtaining evidence it believed essential to its case.

11. The Department of Defense Inspector General has clear statutory authority to subpoena the financial records of individuals pursuant to the Inspector General's Act of 1978, 5 U.S.C.App. 3 § 6(a)(4). In *Lytle v. Inspector General of the Department of Defense,* 1988 U.S.L.W. 8607 (N.D.Ill.1988) (memo. op.), the Department of Defense Inspector General issued a subpoena on behalf of the Army Criminal Investigation Com-

mand. The procedure was not challenged in that case. With respect to records sought from financial institutions, this power was limited only by the notice requirements of The Right to Financial Privacy Act of 1978. 12 U.S.C. § 3405 (1982). *See* 12 U.S.C. § 3401(3) (" 'Government authority' means any agency or department of the United States"). That Act only requires judicial approval of an agency's subpoena for bank records if challenged. *See* note 11.

12. 12 U.S.C. §§ 3401 *et seq.* (1982). Had subpoenas been issued by the DOD IG, the appellant would have been entitled to challenge the issuance of the subpoenas to financial institutions in a United States district court. 12 U.S.C. § 3410 (1982). *See Duncan v. Belcher,* 813 F.2d 1335 (4th Cir.1987).

13. There is evidence of record indicating that the December 1985 decision to forgo the use of the DOD IG subpoena was premised, in part, on the Government's belief that the charges would soon be referred to trial and that its subpoena power under Rule for Courts–Martial 703 could then be used to obtain the records within the 120–day speedy trial requirement. To the Government's misfortune, the time involved in referring the case to trial exceeded its estimate by two months.

was nonetheless a deliberate decision to forgo a viable means of obtaining evidence.

The predicate of due diligence is also negated by the availability of another means by which the trial counsel could have compelled production of these documents. These records could have been obtained through deposition. Article 46, UCMJ, 10 U.S.C. § 846, provides in pertinent part:

Process issued in court-martial cases to compel witnesses to appear and testify *and to compel the production of other evidence* shall be similar to that which courts of the United States having criminal jurisdiction may lawfully issue.

The Federal Rules of Criminal Procedure authorize the issuance of subpoenas for purposes of deposition. Fed.R.Crim.P. 17(f). This power includes the issuance of subpoenas to compel production of documents before trial. Fed.R.Crim.P. 17(c). *See, e.g., United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1973). The 1984 Manual for Courts–Martial reflects this Congressional authorization. Rule for Courts–Martial 702 provides:

A deposition may be ordered whenever, *after preferral of charges, due to exceptional circumstances* of the case it is in the interest of justice that the testimony of a prospective witness be taken and preserved for use at an investigation under Article 32 or a court-martial.

R.C.M. 702(a) (emphasis added). The trial team had authority to issue a subpoena for a deposition. R.C.M. 703(e)(2)(B), discussion. Rule for Courts–Martial 703(e)(2)(B) specifically authorized the trial team to issue subpoenas to compel the production of documents. Thus, the records sought in the case at bar could have been discovered through the exercise of this power at any time after preferral of charges on 7 August 1985. R.C.M. 702(a).

The Government has failed to persuade this court that the records sought could not have been obtained in a more timely manner. Therefore, the Government has failed

to carry its burden of persuading this court that it is entitled to exclusion pursuant to Rule for Courts–Martial 707(c)(5)(A).

B

Nor do we find exceptional circumstances that would justify exclusion pursuant to Rule for Courts–Martial 707(c)(5)(B). The Government argues that fraud cases are unusually complex and require a much longer time to prepare. Further, we note that this particular case bore a high security classification. However, the continuance obtained by the Government was neither requested nor granted on either of these grounds. Assuming these circumstances may have been exceptional, the delay did not result from either. Therefore, the Government has failed to carry its burden of persuading this court that it is entitled to an exclusion pursuant to Rule for Courts–Martial 707(c)(5)(B).

Neither of these avenues to obtain the bank records in a timely fashion were so novel that we should not apply them. Thus, we need not decide here whether novelty of approach impacts on application of the "due diligence" standard.

Consequently, the Government was not entitled to exclusion of the period of delay dating from 22 March 1986 through 18 May 1986. At a pretrial session, the Government conceded that it was chargeable with 85 days of delay on the speedy trial clock through 18 March 1986. The military judge charged the Government with additional periods of delay totaling 25 days. We find these rulings to be correct in law and in fact. Adding now the 58 days of delay erroneously excluded, the Government is chargeable with a delay of no less than 168 days in bringing the appellant to trial.[14] Accordingly, we find that the appellant was not brought to trial within the 120 days mandated by Rule for Courts–Martial 707(a). The remedy, of necessity, is dismissal. R.C.M. 707(e).

14. Our ruling eliminates the necessity of reviewing the other exclusions granted by the military judge.

*False Swearing*

### III

One finding is unaffected by the Government's violation of the speedy trial rule: the finding of guilty of the offense of false swearing.[15] We hold that a deposition in a civil case is a judicial proceeding within the meaning of Article 131, UCMJ, 10 U.S.C. § 931, and find that the appellant should have been prosecuted under Article 131, UCMJ. Therefore, this court may not affirm the appellant's conviction for false swearing even though the error was in part defense induced and the Government did not appeal the military judge's ruling.

### A

*Facts*

In September 1983, a government agent requested access to certain business records of a travel agency. The president of the agency refused to release the records without authorization. She telephoned the appellant and, in a conversation which lasted "15 seconds or so," requested authorization to release the records to the government agent. The appellant authorized the release of these documents.

During a civil deposition conducted on 26 September 1985,[16] the appellant testified:

Q: Well, you did authorize the release to Golden of travel documents from V.I.P. Travel; isn't that correct?

A: I did not.

Q: Do you know who Joan Matherd is, the President of V.I.P. Travel? Have you ever discussed business with her?

A: I don't recall the name. You'll have to show me a face, an individual.

Q: Have you done business with V.I.P. Travel?

A: Yes.

Q: Do you recall a phone conversation that you had with her in September 1983 where you instructed her to release travel documents to Mr. Golden?

A: I don't recall that individual, nor do I recall releasing those documents—or asking for the release of those documents.

Q: So, you are saying this didn't happen?

A: Yes.

Q: You never talked to her or instructed her to release the documents to Mr. Golden?

A: No.

The Government charged the appellant with perjury alleging that he had falsely testified that he had not authorized the release of travel documents by V.I.P. Travel to the Government agent.

At trial, the appellant moved for dismissal of the perjury charge arguing that a deposition in a civil case is not a "judicial proceeding" or a "course of justice" such as to be susceptible of prosecution under Article 131, UCMJ. The military judge granted the motion on grounds that charging a soldier with perjury under Article 131, UCMJ, for a false statement made during a deposition in a civil matter was outside the scope of the offense proscribed by the statute.[17] At a subsequent session, the Government noted that the military judge had dismissed the perjury charge but moved for permission "to proceed with the lesser included [offense] of false swearing" under Article 134, UCMJ. The military judge granted the Government motion.[18]

---

**15.** The Additional Charge and its Specification.

**16.** This deposition was collateral to a civil case tangentially related to the case at bar.

**17.** The military judge ruled: "[L]aying a charge under Article 131 as to something he's done in a civil proceeding which is not an enhancement of the Uniform—the procedures and motives and purposes of the Uniform Code of Military Justice, I think is too broad, too far afield and too broad for the concept, theory, practice and intent of the Code, and I so find as a matter of law."

**18.** In form, the military judge's ruling permitted the Government to proceed on a "lesser included" offense when the greater offense had been dismissed and was nonexistent as a matter of law. In substance, the Government's "request" appears to be a motion for reconsideration of the order dismissing the charge. However, the ruling permitting the Government to proceed on the basis of a charge of false swearing in lieu of the perjury charge was in effect the addition of an offense after arraignment and over objection of the appellant in violation of the Manual. *See* R.C.M. 603. When known facts indicate sepa-

## B

With respect to the appellant's argument at trial, we note that the language of Article 131 differs from its Federal counterparts, 18 U.S.C. §§ 1621, 1623 (1982),[19] and find no precedent defining "judicial proceeding" as that term is used in Article 131, UCMJ. Nor do we find an aid to construction in the legislative history of the statute. That term was, however, a component of the common law offense of perjury. *Wharton's Criminal Law* § 601 (14th ed. 1981). Similar language appears in the 1949 Manual for Courts–Martial. Manual for Courts–Martial, United States Army, 1949, paragraph 180h [hereinafter MCM 1949].

Although depositions were unknown at common law,[20] the common law offense encompassed not only testimonial violations of the oath but "any willful assertion . . . in any form allowed by law to be substituted for an oath, whether in open court, in an affidavit, or otherwise" because the grava-

man of the offense lies in the "misleading of the court, jury, or person holding the proceeding." 60A Am.Jur.2d *Perjury* § 1 (1988). Similarly, the 1949 Manual required proof "[t]hat a certain judicial proceeding or course of justice *was pending.*" MCM, 1949, paragraph 180h (emphasis added). Under the Federal Rules of Civil Procedure, a deposition is an authorized pretrial discovery mechanism subject to judicial supervision and, in final analysis, part of the judicial process. We conclude that a deposition is a "judicial proceeding" under Article 131, UCMJ.[21] With respect to the rationale announced by the court below in granting the appellant's motion to dismiss, we note that service connection is no longer an element of court-martial jurisdiction, *Solorio v. United States,* 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 *reh. denied,* 483 U.S. 1056, 108 S.Ct. 30, 97 L.Ed.2d 819 (1987), and that Congress would have employed more restrictive language had it in-

---

rate and mutually exclusive theories of criminal liability, an exigency of proof of exists. In such cases, the Government may properly charge *both* offenses and prosecute the accused under alternate theories of criminal liability. Nevertheless, the Government is required to refer both offenses to trial.

**19.** Section 1623 of title 18 was enacted in 1970 in order to relax the Government's burden of proof by modifying the common law "two witness rule" for prosecuting perjury committed in court and grand jury proceedings. *Dunn v. United States,* 442 U.S. 100, 109 (1979). The offense subject to 18 U.S.C. § 1623 includes perjury committed "in any proceeding before *or ancillary to* any court or grand jury." 18 U.S.C. § 1623(a) (emphasis added). This statute has been construed as applying in any "court supervised proceedings." *United States v. Lardieri,* 497 F.2d 317 (3d Cir.1974). The federal perjury statute is codified at 18 U.S.C. § 1621—referred to as "the general perjury statute," *United States v. Howard,* 855 F.2d 832, 839 n. 3 (11th Cir. 1988)—includes perjury committed by anyone who takes an oath "in any case" that "he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true." 18 U.S.C. § 1621 (1982). Federal courts have held that these statutes "overlap" and that perjury at a judicial proceeding may be prosecuted under either. *United States v. Ruggiero,* 472 F.2d 599, 606 (2d Cir.), *cert. denied,* 412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398 (1973).

**20.** Pretrial discovery is a relatively recent innovation in trial procedure. *Hickman v. Taylor,* 329 U.S. 495, 500, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947).

**21.** Our ruling today does no more than interpret Article 131, UCMJ, in accordance with the Federal perjury statutes. Under these statutes, perjury committed during the course of a civil deposition is subject to prosecution under either statute. Thus, the violation of an oath at a deposition taken in a civil case constitutes the offense of perjury under federal law even though a deposition is not in a strict sense a "court" proceeding. The following cases involve perjury convictions under 18 U.S.C. § 1623: *United States v. Adams,* 870 F.2d 1140 (6th Cir.1989); *United States v. Schulman,* 817 F.2d 1355 (9th Cir.), *petition for cert. dismissed,* 483 U.S. 1042, 108 S.Ct. 362, 97 L.Ed.2d 803 (1987); *United States v. Moreno Morales,* 815 F.2d 725 (1st Cir.), *cert. denied,* 484 U.S. 966, 108 S.Ct. 458, 98 L.Ed.2d 397 (1987); *United States v. Reed,* 773 F.2d 477 (2d Cir.1985); *United States v. Jonnett,* 762 F.2d 16 (3d Cir.1985). Even after the enactment of section 1623, perjury committed during civil depositions continued to be prosecuted under 18 U.S.C. § 1621. *See, e.g., United States v. Eckhardt,* 843 F.2d 989 (7th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 106, 102 L.Ed.2d 81 (1988); *United States v. Reveron Martinez,* 836 F.2d 684 (1st Cir.1988); *United States v. Massa,* 804 F.2d 1020 (8th Cir.1986), *cert. denied,* — U.S. —, 109 S.Ct. 508, 102 L.Ed.2d 543 (1988).

tended Article 131 to apply solely to criminal proceedings.

## C

■ Having determined that the appellant's alleged misconduct should have been prosecuted under Article 131, UCMJ, this court cannot affirm his conviction for the offense of false swearing. The offense of false swearing is not lesser included in the offense of perjury. *United States v. Smith*, 26 C.M.R. 16, 18 (C.M.A.1958); *United States v. Claypool*, 27 C.M.R. 533 (A.C.M.R.1958). *Accord United States v. Kennedy*, 12 M.J. 620 (N.M.C.M.R.1981); *United States v. Warble*, 30 C.M.R. 839 (A.F.C.M.R.1965). A false statement made in the course of a judicial proceeding either "meets the requirement for perjury under the Article or no offense has been committed." *United States v. Smith*, 26 C.M.R. at 18.

Clearly, the essence of both of these offenses is the making of a false statement under oath and there can be no doubt that the elements of the Article 134, UCMJ, offense of false swearing as set forth in the Manual include "some but not all" of the elements of the Article 131, UCMJ, offense of perjury. *Compare* Manual for Courts–Martial, United States, 1984, [hereinafter MCM], Part IV, paragraph 57b (perjury), *with* MCM, paragraph 79b (false swearing). Nevertheless, these offenses do not in military law stand as lesser included one of the other.[22] False swearing embraces an additional "element": the violation of oath must *not* have been committed in the course of justice or in a judicial proceeding. *Cf. United States v. Smith*,

26 C.M.R. at 18 ("If, therefore, a false statement is made under oath in a judicial proceeding, it must therefore meet the requirements for perjury under the Article or no offense has been committed"); MCM, paragraph 79c(1) ("False swearing ... does not include such statement made in a judicial proceeding or in a course of justice, as these are under Article 131").

■ This rule is not a quirk or a mere technicality of law. It is based on the sound legislative policy that the law "must not be so severe as to discourage witnesses from appearing or testifying." *Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973) (quoting Study of Perjury, *reprinted in* Report of New York Law Revision Commission, Legis.Doc. No. 60, p. 249 (1935)). For false statements made in the course of a judicial proceeding, Congressional policy requires an *actus rea* of greater degree before criminal liability is imposed: the false statement must be "material" to the proceeding. Congress was aware of the burden of proof imposed by its choice of language. *Cf. Dunn v. United States*, 442 U.S. 100, 109, 99 S.Ct. 2190, 2195, 60 L.Ed.2d 743 (1979). Congress was also aware of the holding in *Smith* when it amended Article 131 in 1976 and again in 1982. Nevertheless, Congress did not amend the statutory language to alter the effect of the *Smith* decision. *See* 10 U.S.C.A. § 931 (1982) (Historical and Revision Notes). Because the choice of language does not appear inadvertent, we must therefore conclude that Article 131 is intended as the exclusive measure of criminal liability for false statements during a judicial proceeding. Thus, the preemption

---

**22.** The common law offenses of perjury and false swearing were greater and lesser included offenses. *Wharton's Criminal Law*, § 606 (14th ed. 1981). *But see State v. Ramos*, 430 Mich. 544, 424 N.W.2d 509, 523 (1988) (citing Perkins & Boyce, *Criminal Law* (3d ed.), p. 511). As statutory enactments superseded the common law, the relationship between these offenses became a matter of statutory construction. Some legislative enactments eliminate the distinct offense of "false swearing" and deem it perjury of a lesser degree. *See, e.g., People v. Russell*, 87 Misc.2d 665, 386 N.Y.S.2d 333 (1976). The courts of other states have found that, lacking specific legislation, the offense of false swearing

does not exist at all. *State v. Warren*, 24 Ariz. App. 380, 539 P.2d 184 (1975). Other courts have construed the laws of their state as preserving the lesser-included aspect of these offenses. *See, e.g., State v. Bower*, 442 N.W.2d 438 (N.Dak.1989); *State v. Sands*, 123 N.H. 570, 467 A.2d 202 (1983); *State v. Greenlaw*, 50 Or.App. 97, 622 P.2d 325 (1981). Other statutes have been interpreted as creating distinctive and mutually exclusive offenses. *See, e.g., Plummer v. State*, 90 Ga.App. 773, 84 S.E.2d 202 (1954). In *United States v. Smith, supra*, the United States Court of Military Appeals held that the Uniform Code of Military Justice follows this latter course.

doctrine [23] overrides the lesser included offense doctrine and the element of materiality cannot be avoided under the rubric of Article 134 in prosecutions for false statements made in the course of a judicial proceeding. *See United States v. Claypool,* 27 C.M.R. 533 (A.C.M.R.1958), *affirmed,* 27 C.M.R. 376 (C.M.A.1959).

The findings of guilty and the sentence are set aside. Charge III and Charge IV and their Specifications are dismissed. A rehearing may be ordered by the same convening authority on the charge and specification of Additional Charge I.

Judge WERNER concurs.

CARMICHAEL, Judge, concurring: *

I am satisfied that we have correctly applied the provisions of Rule for Courts–Martial 707 to the facts of this case. I am also satisfied that Rule 707, as presently drafted, is unique in its sweeping insulation of accused servicemembers not from delay but from trial. Unlike the Speedy Trial Act of 1974, 18 U.S.C. §§ 1361, *et seq.* (1982), or Federal Rule of Criminal Procedure 48(b), this rule does not allow a military judge the discretion to dismiss charges without prejudice should he find the Government in violation of the prescribed time limits for speedy trial. The analysis justifies the Rule's Draconian prejudice *per se* approach by stating that dismissal without prejudice would be a meaningless remedy, that it would further delay a case already found to have been unreasonably delayed, and that such a practice would be "particularly inappropriate in courts-martial." Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 707, analysis, app. 21, at A21–38.

I disagree. First, dismissal without prejudice is a definite sanction since the Government is out of court and is prevented-albeit temporarily—from beginning its case on the merits. Second, rules similar to Rule 707, such as the Federal Speedy Trial Act, emanate from a public outcry for the prompt disposition of criminal cases, not from public interest in expanding speedy trial rights. To the extent a criminal justice system brings an accused to trial swiftly, it alleviates public fears that the same accused will commit other crimes during an extended period of pretrial freedom. Thus, broad judicial discretion in applying these rules is consistent with what I perceive as their primary purpose: to safeguard public interest in an efficient criminal justice process. Third, unnecessary delay in bringing an accused to trial may not be of constitutional magnitude; that is, it may not affect an accused's sixth amendment right to a speedy trial. This is simply because Rule 707 imposes a more stringent standard on the Government than does the Constitution or, for that matter, the Uniform Code of Military Justice. In the absence of a constitutional violation, I believe a military judge should have the discretion to decide whether the Government should be permanently barred from prosecuting the case.

In exercising this discretion, military judges could apply the same balancing test developed by the Supreme Court of the United States to resolve allegations of speedy trial violations premised upon the sixth amendment. *See generally Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *see also United States v. MacDonald,* 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978). *Cf. United States v. McCallister,* 24 M.J. 881, 891–92 (A.C.M.R.

---

**23.** [I]f the legislature has explicitly prohibited certain conduct, then it did not also intend to prohibit other conduct which, though similar, does not meet the statutory requirements for criminal liability.
*United States v. Taylor,* 23 M.J. 314, 317 (C.M.A. 1987).
We note that the preemption doctrine has also been applied to the federal false statement statute, 18 U.S.C. § 1001 (1982). This statute, which applies to unsworn statements, has been

held applicable only to false statements made to a court in its "housekeeping" and "administrative" functions. *See generally United States v. Barber,* 881 F.2d 345 (7th Cir.1989). Consequently, this offense is not lesser included in the federal perjury statutes even though its elements are technically embraced within the perjury statutes.

* Judge H. St. G. T. Carmichael took final action in this case prior to his retirement.

1987). Some of the factors which should be assessed in applying the test are the length of the delay beyond the prescribed time limits, the reason for the delay, the accused's assertion of his right and prejudice to the accused. *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. at 2191–92. Two other pertinent factors are whether the Government intentionally or unintentionally exceeded the prescribed time limits and the relative seriousness of the alleged offense or offenses. These factors would serve as the military judge's touchstone in the exercise of his discretion and, if the judge were required to articulate the basis for his ruling on the matter, would provide a basis for meaningful appellate review for abuse. *See generally United States v. Taylor*, 487 U.S. 326, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988) (the trial court's desire to send a strong message to the Government was an insufficient reason to dismiss the indictment with prejudice for noncompliance with the Speedy Trial Act).

In my opinion, subsection (e) of Rule for Courts–Martial 707 should be revised to give military judges the discretion to dismiss either with or without prejudice if they find the Government in noncompliance with the Rule's time limits.[1]

---

1. In some instances, of course, the discretion to dismiss without prejudice would not exist. Examples that readily come to mind are proceedings where jeopardy has attached, or delays which violate the sixth amendment right to speedy trial.