Senior Airman Sidney L. JONES, USAF, Plaintiff,

v.

The DEPARTMENT OF the AIR FORCE and The Department of Defense, Defendants.

No. 95–B–1715.

United States District Court, D. Colorado.

Nov. 26, 1996.

---

1508

Alison L. Ruttenberg, Denver, CO, for Plaintiff.

Arthur R. Goldberg, Allison C. Giles, U.S. Dept. of Justice, Washington, DC, Cynthia L. Clark, Air Force Legal Services Agency, General Litigation Division, Arlington, VA, Henry L. Solano, United States Attorney, Linda A. Surbaugh, Assistant U.S. Attorney, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendants, Department of the Air Force (Air Force) and the Department of Defense (DOD) (collectively, defendants), move, pursuant to Fed.R.Civ.P. 56, for summary judgment on the claims of plaintiff, Senior Airman Sidney L. Jones, USAF (Jones). Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1361, 12 U.S.C. § 3416, and 5 U.S.C. § 552a(g)(5) and 706(2)(A) and (C). Based on my consideration of the motion and briefs filed and counsel's argument, I will grant the motion.

### I.

The following facts are not in dispute. Senior Airman Jones was an active duty member of the United States Air Force stationed at Falcon Air Force Base, Colorado. Jones was discharged from the Air Force on April 19, 1996, under "other than honorable conditions." Between August, 1994 and November, 1994, the Air Force Office of Special Investigations (AFOSI) investigated Jones for allegedly uttering worthless checks by "dishonorable failure" to maintain funds in his checking accounts. Jones wrote checks that "bounced" at various Army and Air Force post exchanges and base non-commissioned officers (NCO) clubs. 2nd C/O ¶ 4.

During the AFOSI investigation, AFOSI Special Agent Brunk (SA Brunk) inspected Jones' medical and mental health records. SA Brunk published the information contained in these records by including them in the Report of Investigation (ROI) he prepared and distributed.

On two occasions, the AFOSI gained access to Jones' financial records by use of a "formal written request" pursuant to the Right to Financial Privacy Act (RFPA), 12 U.S.C. § 3401 et seq. Jones was given Notice of Access to Financial Records, dated September 14, 1994, pursuant to the RFPA, 12 U.S.C. § 3408(4)(A), informing him that the AFOSI was seeking information by means of "formal written requests" from Provident Bank of Maryland and Tower Federal Credit Union. Jones did not file any challenge to the government's actions in seeking access to his financial records. On October 3, 1994, the AFOSI filed RFPA certificates of compliance with Provident Bank of Maryland and Tower Federal Credit Union. The AFOSI obtained access to Jones' financial records at these two institutions on October 4 and 5, 1994.

On March 21, 1995, the AFOSI mailed Jones a second RFPA Notice of Access to Financial Records informing him that the AFOSI was seeking, by means of "formal written requests," four particular checks from Tower Federal Credit Union, Fort Eustis Federal Credit Union, and Kessler Federal Credit Union. On April 26, 1995, SA Brunk hand-delivered to Jones the RFPA Notice of Access to Financial Records informing him of the AFOSI's actions in seeking the four checks from the three federal credit unions. Once again, Jones did not challenge the government's actions in seeking access to his financial records. After the AFOSI filed RFPA certificates of compliance, the AFOSI obtained certified copies of the four checks from the financial institutions on May 15 and 16, 1995.

On March 20, 1995, charges for a general court-martial were preferred against Jones. The next day, an Article 32 investigative hearing of Jones was convened. On July 19, 1995, a Special Court–Martial convened at which Jones entered a conditional guilty plea. He was to be sentenced to three months confinement, hard labor without confinement for one month, a reprimand, and a reduction to the grade of Airman First Class from the rank of Senior Airman. On February 1, 1996, an Air Force administrative discharge board held a hearing and recommended that Jones receive an "other than honorable discharge." Jones was discharged on other than honorable grounds on April 19, 1996.

## II.

### *SUMMARY JUDGMENT STANDARD*

The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995). Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.,* 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

## III.

Defendants seek summary judgment on Jones' claims that:

Claim one—the Air Force obtained access to his financial information in violation of 12 U.S.C. § 3402 by submitting a formal written request to which they were not entitled pursuant to 12 U.S.C. § 3408 (Air Force only);

Claim two—he is entitled to a declaration pursuant to 28 U.S.C. § 2201, against the DOD that regulations 32 C.F.R. part 294 and DOD Directive 5400.12 are invalid (DOD only);

Claim three—he is entitled to a declaration pursuant to 28 U.S.C. § 2201, against the Air Force and the DOD that DOD Directive 1344.9 and DOD Instruction 1344.9 are invalid (Air Force and DOD); and

Claim four—the Air Force violated the Privacy Act, 5 U.S.C. § 552a(g)(1)(d) and 5 U.S.C. § 706(2)(A) by inspecting and publishing information contained in Jones' medical and mental health records (Air Force only).

### A. Right to Financial Privacy Act, 12 U.S.C. § 3401 et seq.

Jones argues the Air Force violated the RFPA based on three separate incidents: 1) Jones' credit unions provided bank records pursuant to AFOSI's formal written requests, 2nd Amended C/O ¶¶ 9–10; 2) a consumer finance institution called Jones' supervisor, *id.* at ¶ 11; and 3) The Finance Company wrote a letter to Jones' former commander and later spoke by telephone with Jones' first sergeant. *Id.* at ¶ 12.

The Right to Financial Privacy Act of 1978 prohibits financial institutions from providing the government with information about their customers' financial records unless the customer authorizes the release or the government obtains a valid subpoena or warrant. *United States v. Frazin,* 780 F.2d 1461 (9th Cir.1986); 12 U.S.C. § 3402.

Congress passed the Act, in part in response to *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), in which the Supreme Court held that a bank customer has no constitutionally protected privacy interest in bank records. *See* H.R.Rep. No. 1383, 95th Cong., 2d Sess. 34 (1978), U.S.Code Cong. & Admin.News 1978, pp. 9273, 9306. The Act "fill[s] the void in ... Federal law [left by *Miller*] regarding statutory protection against unrestricted access to third-party records" by the federal government. Hearings on S. 2096, S. 2293, and S. 1460 before the Subcomm. on Financial Institutions of the Senate Comm. on Banking, Housing, and Urban Affairs, 95th

Cong., 2d Sess. 154 (1978) (statement of Senator Mathias).

Both Congress and the Executive Branch regarded the Act as a compromise between a "bank customer's right of financial privacy and the need of law enforcement agencies to obtain financial records pursuant to legitimate investigations." *United States v. Frazin*, 780 F.2d at 1465; *See* H.R.Rep. No. 1383 at 34 reprinted in 1978 U.S.Code Cong. & Admin.News 9273, 9306.

1. Formal written requests

The RFPA prescribes narrowly-tailored procedures by which the government may obtain financial institution records. Title 12 U.S.C. § 3402 provides:

Except as provided by section 3403(c) or (d), 3413, or 3414 of this title, no Government authority may have access to or obtain copies of, or the information contained in the financial records of any customer from a financial institution unless the financial records are reasonably described and—

(1) such customer has authorized such disclosure in accordance with section 3404 of this title;

(2) such financial records are disclosed in response to an administrative subpena or summons which meets the requirements of section 3405 of this title;

(3) such financial records are disclosed in response to a search warrant which meets the requirements of section 3406 of this title;

(4) such financial records are disclosed in response to a judicial subpena which meets the requirements of section 3407 of this title; or

(5) such financial records are disclosed in response to a formal written request which meets the requirements of section 3408 of this title.

It is undisputed that the AFOSI does not have authority to issue an administrative summons or subpoena. PTO ¶ 3 p. 5. However, the government may obtain financial records pursuant to a formal written request if:

(1) no administrative summons or subpena authority reasonably appears to be available to that Government authority to obtain financial records for the purpose for which such records are sought;

(2) the request is authorized by regulations promulgated by the head of the agency or department;

(3) there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry; and

(4)(A) a copy of the subpena has been served upon the customer or mailed to his last known address on or before the date on which the request was made to the financial institution together with the following notice which shall state with reasonable specificity the nature of the law enforcement inquiry:

Records or information concerning your transactions held by the financial institution named in the attached request are sought by this (agency or department) in accordance with the Right to Financial Privacy Act of 1978 [12 U.S.C.A. § 3401 *et seq.*] for the following purpose:

If you desire that such records or information not be made available, you must:

1. Fill out the accompanying motion paper and sworn statement or write one of your own, stating that you are the customer whose records are being requested by the Government and either giving the reasons you believe that the records are not relevant to the legitimate law enforcement inquiry stated in this notice or any other legal basis for objecting to the release of the records.

2. File the motion and statement by mailing or delivering them to the clerk of any one of the following United States District Courts:

3. Serve the Government authority requesting the records by mailing or delivering a copy of your motion and statement to

4. Be prepared to come to court and present your position in further detail.

5. You do not need to have a lawyer, although you may wish to employ one

to represent you and protect your rights.

If you do not follow the above procedures, upon the expiration of ten days from the date of service or fourteen days from the date of mailing of this notice, the records or information requested therein will be made available. These records may be transferred to other Government authorities for legitimate law enforcement inquiries, in which event you will be notified after the transfer; and

(B) ten days have expired from the date of service of the notice or fourteen days have expired from the date of mailing the notice to the customer and within such time period the customer has not filed a sworn statement and an application to enjoin the Government authority in an appropriate court, or the customer challenge provisions of section 3410 of this title have been complied with.

12 U.S.C. § 3408.

**a. First set of formal written requests**

██ Under the first set of formal written requests processed in September and October, 1994, the Air Force had two choices. It could obtain the records by administrative subpoena under 12 U.S.C. § 3405 or it could obtain the records by formal written request under 12 U.S.C. § 3408.

It is undisputed that the Department of Defense Inspector General (DODIG) has the authority to issue administrative subpoenas. However, the Air Force chose to use the formal written request instead of a subpoena based on a DODIG policy issued in 1993 limiting the issuance of administrative subpoenas in "bad check" cases to those in which the actual financial harm to the United States government was at least $1,000. Def. Exh. 14.

Here, at the time of the AFOSI inquiry, SA Brunk did not apply for an administrative subpoena because it appeared the financial harm to the government totalled only $767.00. (Def.Exh. 12 Brunk depo. p. 60; Def.Exh. 13 Brunk Aff. ¶¶ 3–4). Therefore, as a matter of law, I conclude that administrative subpoenas were not "reasonably avail-

able" to AFOSI in September and October, 1994.

Jones argues that SA Brunk's actions were improper because SA Brunk stated that he would not have requested an administrative subpoena no matter how much the financial harm to the United States since he believed he could always submit a formal written request for financial records. Pltfs.Exh. B p. 15. However, this mistaken belief is not material because Brunk submitted a formal written request based on the valid reason that it appeared the amount of financial harm was less than $1,000. Moreover, whether the records were obtained by means of an administrative subpoena or a formal written request, the RFPA requires identical forms of notice. 12 U.S.C. §§ 3405(2) and 3408(4)(A).

There is no dispute that Jones received proper RFPA notice that the Air Force was seeking his financial records from Kessler Federal Credit Union, Fort Eustis Federal Credit Union, and Tower Federal Credit Union. (Pltf.Exh. E). The notice is phrased in the identical language of the RFPA under either § 3405(2) (administrative subpoena) or § 3408(4)(A) (formal written notice). Here, whether the AFOSI had the authority to use the subpoena option rather than the formal written notice is an immaterial distinction. See *Hunt v. United States Securities and Exchange Comm'n*, 520 F.Supp. 580, 608 (N.D.Tex.1981).

**b. Second set of formal written requests**

██ Jones argues the Air Force's use of the second set of formal written requests was improper because SA Brunk prepared the second set of formal written requests on March 20, 1995, one day after charges were preferred against Jones. Although Jones agrees that the DOD Inspector General will not issue DODIG subpoenas after charges are preferred, he argues that an administrative subpoena was available through another alternative method; after preferral of charges, the convening authority has the ability to obtain financial records by issuing a subpoena pursuant to Rules for Courts–Martial (RCM) Rule 702. Thus, he argues, a subpoena was "reasonably available" and the Air Force could not use formal written re-

quests to obtain the records. *See United States v. Byard,* 29 M.J. 803, 807 (A.C.M.R. 1989).

Rule 702 applies only when there are "exceptional circumstances" in a case. RCM Rule 702. Without further support or explanation, Jones states this case was an "extraordinary situation." I disagree. This routine investigation into a service member's writing a number of bad checks is not an "extraordinary situation" under Rule 702. Thus, a Rule 702 subpoena was not reasonably available in April, 1995.

Jones cites *United States v. Byard,* 29 M.J. 803 (A.C.M.R.1989) in support of his claim that the second set of "formal written requests" were utilized to obtain records in violation of the RFPA. I disagree. In *Byard,* the United States Army Court of Military Review set aside the conviction of Lt. Colonel Byard and dismissed the case against him on speedy trial grounds because the government failed to utilize the DODIG subpoena power to obtain records. In a speedy trial case, RCM Rule 707, in effect during *Byard,* required the government to establish that it had exercised "due diligence" to obtain evidence to exclude a period of delay in computing the date on which the accused must be brought to trial. The *Byard* court found no "due diligence" when the government's decision was "premised upon a calculated estimate of the time required for [obtaining DODIG subpoenas] balanced against its desire to avoid involving the DODIG and its desire to avoid the requirements of the [RFPA]." *Id.* at 806. The Court stated that if the DODIG had issued the subpoenas, Byard would have been entitled to challenge the subpoenas under the RFPA, § 3410.

Jones' case is distinguishable. Here, the applicable standard is not "due diligence." Rather, it is whether no administrative summons or subpena authority reasonably appeared to be available. Also, unlike the *Byard* defendants, the Air Force was not seeking to avoid the requirements of the RFPA. Indeed, the Air Force sought to comply with the RFPA by use of the "formal written request," an RFPA procedure which entitled Jones to challenge the Air Force's request for his financial records. Also, despite proper notice under the RFPA, Jones failed to challenge either set of formal written requests. Under these circumstances, I conclude, as a matter of law, the defendants did not violate the RFPA by obtaining Jones' financial records through use of the "formal written request" pursuant to 12 U.S.C. § 3408.

c. Release of Jones' The Finance Company financial records to Master Sergeant Palmer

■ The Finance Company (TFC), Norfolk, Virginia, sent a letter dated July 14, 1995, to the Commanding Officer at Falcon Air Force Base regarding a past-due loan Jones had with it. Def.Exh. 17. The letter stated that Jones' account had been paid through November, 1994 and was $2,702.05 past due at the time of the letter. It also stated:

> Thank you in advance for your assistance in resolving the problem I am experiencing with the above referenced service member.... I am respectfully requesting that you interview this customer with the hopes that contact will be made to me at my office so that satisfactory arrangements will be made to bring this account to a current status.

*Id.*

As a follow-up to this letter, Master Sergeant Richard E. Palmer (Palmer), Jones' first sergeant at the time, called TFC on September 18, 1995. In the conversation, a TFC employee *volunteered* information about Jones' loan. Palmer informed TFC the Air Force had no authority to resolve disputed claims or to require members to pay a private debt without a civil judgment. The next day, Palmer spoke with Jones about his past due debt to TFC and directed him to contact them.

On September 22, 1995, Palmer called TFC a second time, "to ask if Airman Jones had contacted them like he was directed on the 19th." Def.Exh. 18 p. 16. Palmer spoke with TFC a third time on October 19, 1995 but "[t]here was no substance to that phone call at all." *Id.* at 16–17. Palmer spoke with

TFC for the fourth and last time on October 20, 1995 "just to see if they were satisfied with the progress that was being made with the help that they asked for." *Id.* at 17. TFC offered no information in that telephone call. *Id.* Palmer testified in his deposition that his calls to TFC were not an effort on his part to assist in the collection of a debt. Pltf.Exh. E p. 23–24.

There is no genuine dispute that TFC disclosed financial information about Jones in its letter to the Air Force and in the first phone call between Palmer and a TFC employee, but did not disclose any financial information to Palmer in the three other phone calls. Thus, I limit my analysis to the letter and the first telephone call.

A financial institution may disclose financial information to the government under the RFPA "debt collection" exception, 12 U.S.C. § 3403(d), which provides:

> [n]othing in this chapter shall preclude a financial institution, as an incident to ... collecting on a debt owing ... to the financial institution ... from providing copies of any financial record to any court or Government authority.

Based on § 3403(d), the Air Force moves for summary judgment on this facet of Jones' RFPA claim. In response, Jones cites *Russell v. Department of the Air Force*, 915 F.Supp. 1108, 1121 (D.Colo.1996) in support of his claim that the Air Force violated the RFPA by obtaining his financial information from TFC while contending it was a "debt collector." The Air Force does not contend it was a "debt collector." Reply Brf. p. 8. Indeed, Palmer informed TFC that the Air Force had no authority to resolve disputed claims or to require members to pay a private debt without a civil judgment. Rather, the Air Force states that § 3403(d) provides explicit authority for *TFC* to disclose financial information to it incident to *TFC's* collection on a debt without rendering the Air Force liable for violating the RFPA. I agree.

Unlike in *Russell*, TFC initiated contact with the Air Force and formally requested the Air Force's assistance in collecting the debt. In so doing, TFC disclosed to the Air Force financial information about Jones.

This is not a predicate for finding the Air Force violated the RFPA. Rather, if it is legal for TFC to initiate contact with the Air Force and disclose financial information incident to TFC's debt collection efforts, it cannot be illegal for the Air Force merely to receive the information and respond to it. Palmer contacted Jones and ordered him to contact TFC. He then followed up with TFC to see if Jones had followed his orders. Palmer did not initiate any pay orders against Jones or otherwise force him to pay TFC. Palmer merely received the unsolicited financial information from TFC and, as Jones' supervisor, contacted Jones and ordered him to contact TFC. Under these circumstances, I conclude that the Air Force did not violate the RFPA when TFC disclosed Jones' financial information to it.

d. Telephone conversation between Lieutenant Sahm and a Maryland federal credit union employee

█ It is undisputed that in March, 1994, a woman employed by an unidentified federal credit union in Maryland spoke with First Lieutenant James M. Sahm (Sahm) by telephone and told Sahm that Jones was over a month late on his truck payment. Approximately four days later, the woman called and talked to Sahm again, and left additional information about the auto payment and another message for Jones. It is also undisputed that Sahm did not initiate any contact with the consumer finance institution. As discussed above, there was no violation of the RFPA when a financial institution to whom Jones owed a debt disclosed financial information to the Air Force in that creditor's attempt to collect the debt. The Air Force merely received the information in unsolicited telephone calls from the creditor.

Accordingly, I will grant defendants' motion for summary judgment on Jones' claim one.

B. *Claim two—Validity of Department of Defense Directive (DODD) 5400.12 in the context of 12 U.S.C. § 3408, R.F.P.A.*

*Claim three—Validity of DODD 1344.12 and DOD Instruction 1344.12*

Defendant DOD moves for summary judgment on Jones' claim two seeking a declara-

tion that DOD Directive 5400.12 (DODD) is invalid to the extent it restricts the language contained in 12 U.S.C. § 3408. The Air Force and DOD also seek summary judgment on Jones' claim three seeking a declaration that DOD Directive 1344.9 and DOD Instruction 1344.12 are invalid in the context of 12 U.S.C. § 3403(d)(3). Defendants argue that these are inappropriate claims under the Declaratory Judgment Act (DJA), 28 U.S.C. § 2201, *et seq.* I agree.

■ The Declaratory Judgment Act provides, in pertinent part:

[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). A declaratory judgment need not be entered if no real purpose would be served. *Martinez v. Winner*, 771 F.2d 424, 443 (10th Cir.), *modified in part on other grounds*, 778 F.2d 553 (10th Cir.1985), *vacated sub nom. on other grounds, Tyus v. Martinez*, 475 U.S. 1138, 106 S.Ct. 1787, 90 L.Ed.2d 333 (1986). A declaratory judgment should not be entered unless it disposes of a controversy and serves a useful purpose. *State Farm Mutual Auto. Ins. Co. v. Mid–Continent Casualty Co.*, 518 F.2d 292, 296 (10th Cir.1975).

■ Here, resolution of claim one will end the parties' RFPA dispute. The declaratory judgment requests neither aid nor add to resolution of claim one. If the Air Force did not violate the RFPA in obtaining Jones' financial records, he lacks standing to seek declaratory relief regarding DOD regulations or directives. Conversely, if the Air Force violated the RFPA, then the RFPA case and controversy is terminated and the requests for declaratory relief are moot.

Jones argues that there is "no authority whatsoever that the declaratory judgment act is not available to prospective Plaintiffs." It is far from clear what he means by this in the present context, but in any event, Jones is a present, not a prospective, plaintiff. Moreover, if a group of "prospective plaintiffs" were to file a case seeking declaratory judgment, they would no longer be "prospective," but in that event a question would arise whether there was an actual controversy as required by the plain language of § 2201(a).

I am granting summary judgment on claim one (RFPA), *supra at* III. A. That ruling is not dependant on any application of the DODD directives or DOD instruction referenced in claims two and three. Accordingly, I will grant defendants' motion for summary judgment as to claims two and three.

### C. *Claim 4—Violation of the Privacy Act, 5 U.S.C. § 552*

■ The Air Force moves for summary judgment on Jones' claim four that the Air Force violated the Privacy Act when SA Brunk reviewed Jones' medical and mental health records and then published statements about the records in the ROI compiled in preparation for Jones' court-martial which was distributed to Air Force personnel. Defendants argue their actions were proper as intra-agency disclosure of records, 5 U.S.C. § 552a(b)(1), as well as a permissible "routine use" disclosure. *Id.* at § 552(b)(3).

The ROI contains the following pertinent paragraphs:

**MEDICAL RECORDS**

3–9. On 6 Sep 94, SA BRUNK reviewed SUBJECT'S medical records, on file at the 21st Medical Group (21MG), PAFB. No information pertinent to this investigation was disclosed.

**MENTAL HEALTH**

3–10. On 6 Sep 94, SA BRUNK reviewed SUBJECTS's records on file at the 21MG/Mental Health Clinic, PAFB. The review disclosed the following information: SUBJECT'S commander was concerned about SUBJECT'S overall emotional and mental state. On 28 Jul 94, SUBJECT was sent to a mandatory appointment with the 21MG/Mental Health Clinic. SUBJECT'S stress was from financial problems and verbal reprimands by the squadron (NFI). SUBJECT also had physical and marital problems (NFI). The records also revealed, Mental Health Officials, Ft. Meade MD, saw SUBJECT previously for an anxiety condition (NFI).

The Privacy Act was enacted to address concerns regarding governmental respect for the personal privacy of citizens. *Russell v. Department of the Air Force,* 915 F.Supp. 1108, 1115 (D.Colo.1996); *Viotti v. United States Air Force,* 902 F.Supp. 1331, 1334–35 (D.Colo.1995); S.Rep. No. 93–1183, 93rd Cong., 2d Sess., reprinted in (1974) U.S.Code Cong. & Adm.News 6916. "The focus of the Privacy Act is on the actions of government agencies in disclosing personal information maintained by them." *Russell,* 915 F.Supp. at 1115–16. "The Privacy Act establishes strict limitations on the compilation and dissemination of personal information about individuals." *Wren v. Harris,* 675 F.2d 1144, 1145 (10th Cir.1982).

The Privacy Act limits access to the records each government agency maintains on an individual unless a person or agency meets one of the "conditions of disclosure" listed in § 552a(b). Here defendants rely on the following conditions of disclosure:

> **Conditions of disclosure.**—No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be—
>
> (1) to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties;
>
> . . .
>
> (3) for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section;
>
> . . . .

5 U.S.C. § 552a(b) (emphasis in original).

Under § 552a(b)(1), disclosure is permitted "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1). This "need to know" disclosure exception encompasses personnel matters.

There is no dispute that after SA Brunk completed his ROI, he provided it to 1) the Staff Judge Advocate at Falcon AFB, for him to provide one copy to the Space Wing Commander and one copy to defense counsel; 2) Jones' unit commander at Falcon AFB, and 3) the 50th Security Police Squadron at Falcon AFB. SA Brunk kept one copy in his working file and placed one in the main file. Thereafter, the Air Force administrative discharge board reviewed the ROI, with the mental health information redacted, in making its decision to discharge Jones.

In *Hass v. United States Air Force,* 848 F.Supp. 926 (D.Kan.1994), plaintiff was alleged to have engaged in off-duty misconduct while on active duty with the United States Air Force. At the request of her commander, Haas underwent a mental health evaluation, *id.* at 928, the results of which were reviewed by Air Force personnel. *Id.* at 932. The district court granted defendant's summary judgment motion on Hass' Privacy Act claim holding that the Air Force could review the mental health records "so that they could make an informed decision regarding plaintiff's future with the Air Force." *Id.* The *Hass* analysis applies equally to the disclosure of Jones' mental health and medical records contained in the unredacted ROI which was relied on by Air Force personnel in evaluating Jones' future with the Air Force. The redacted ROI was employed by the administrative discharge board in recommending that Jones receive an "other than honorable discharge."

Under a plain reading of the Privacy Act, 5 U.S.C. §§ 552a(b)(1) and (3), and applicable case law, I conclude the inclusion of the statements contained in Jones' medical and mental health files in the ROI and the subsequent publication of them were proper as intra-agency disclosures to staff with a "need to know." Accordingly, I will grant defendants' motion for summary judgment on claim four. Based on the foregoing, I need not analyze the Privacy Act's routine use exception.

Accordingly, it is ORDERED that:

1. defendant's motion for summary judgment on all claims is GRANTED;

2.  plaintiff's motion to vacate hearing and strike the defendants' motion for summary judgement is DENIED; and

3.  defendants are awarded costs.