**UNITED STATES**

v.

**Airman Basic William STANDIFER, Jr., FR412–33–0708 United States Air Force.**

**ACM 29171.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 19 Dec. 1991.

Decided 3 Aug. 1992.

Appellate Counsel for the Appellant: Captain David D. Jividen (argued) and Colonel Jeffrey R. Owens.

Appellate Counsel for the United States: Lieutenant Colonel Mark C. Ramsey (ar-

**616**

gued), Lieutenant Colonel Brenda J. Hollis, Major Paul H. Blackwell, Jr., Major Jeffrey C. Lindquist, and Captain David C. Wesley.

Before O'HAIR, RIVES, and MILLS, Appellate Military Judges.

## OPINION OF THE COURT

O'HAIR, Senior Judge:

Contrary to his pleas, appellant was found guilty of escaping from confinement on divers occasions, encouraging and instigating another to make false official statements on divers occasions, and suborning another to commit perjury, in violation of Articles 95, 107, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 895, 907, 934. He was sentenced to a bad-conduct discharge and confinement for 1 year. Before us appellant challenges the legal and factual sufficiency of all three convictions and questions an aspect of the military judge's instructions on the subornation of perjury offense. We agree with several of his points, set aside the findings of guilty on two of the three charges, and provide sentence relief.

At the time of the alleged escapes from confinement, appellant was serving post-trial confinement of 7 months at Nellis Air Force Base, Nevada, because of a prior court-martial conviction for use of cocaine. He was classified as a medium custody prisoner requiring continuous custodial supervision and escort whenever he departed the confinement facility. Appellant is a plumber by trade, and during the work week he was frequently "signed out" by someone from his unit who escorted him to perform work for the base plumbing shop. His alleged misconduct resulted when he persuaded three of his escorts, on different dates, to take him to see his wife, at either her off-base apartment or the on-base plumbing shop.

On one Sunday after this confinement began, one of appellant's supervisors, Mr. Varner, volunteered to take him to the church services conducted on the installation. Immediately before this and all subsequent trips, Mr. Varner had to complete and sign a prisoner escort form which indicated he was taking the prisoner (appellant) to the chapel. For three consecutive Sundays Mr. Varner and appellant went to church as indicated on the form. Sometime prior to the fourth trip to the chapel appellant persuaded Mr. Varner to make a short detour on their way to the chapel and stop by appellant's wife's apartment where he visited her before they returned to the base to go to the church service. After several of these short pre-chapel visits to appellant's wife, Mr. Varner decided to leave appellant at the apartment, go on to the chapel by himself, and then return after the service to pick up appellant at the apartment. They followed this procedure one or two times, and there were also several occasions when Mr. Varner took appellant to meet his wife at the plumbing shop rather than the apartment.

Appellant also successfully convinced two other airmen who served as his escorts to take him to see his wife. All three escorts conceded they had no authority to deviate from their duty to escort appellant to the specifically named, authorized destination. Each of them concluded appellant had manipulated them and played on their sympathies to convince them to permit him to make a visit to his wife.

Clearly the escorts were without authority to take appellant to visit his wife at either location and at least one of the escorts was punished for this dereliction of duty. It is also unquestioned that appellant knew he had no authority to make those visits. This activity was not expressly prohibited by the "Prisoner's Handbook" he was provided, but there were enough limitations levied on his freedom, provided to him both orally and in the Handbook, that he knew he was exceeding his boundaries when he convinced his escorts to take him to see his wife. Additionally, the wrongfulness of these visits was repeatedly discussed between appellant and his escorts. The issue before us, though, is not whether appellant's conduct was unauthorized, but whether it amounts to the criminal offense of escape from confinement. We hold it does not.

■ Escape from confinement requires proof that the accused was ordered into confinement by proper authority and freed himself from confinement before being released by proper authority. Manual for Court–Martial (MCM), Part IV, paragraph 19b (1984). An essential element of confinement is that there must be a showing of a continual physical restraint. *United States v. Hodge*, 50 C.M.R. 445, 448 (A.F.C.M.R.1975). This physical restraint includes situations whereby prisoners are confined to a cell, prisoners who must be escorted by a guard or escort when outside the confinement facility, and prisoners in minimum custody who may go to designated locations without an escort, but remain confined by moral suasion. The offense of escape from confinement occurs when there is a "... completed casting off of the restraint of confinement, before being set at liberty by proper authority ..." MCM, Part IV, paragraph 19c(4)(c) (1984).

■ Although appellant was classified as a medium custody prisoner and was to be escorted to all locations outside of the confinement facility, this evidently did not mean his escort must be a guard in possession of a weapon to help protect himself from the prisoner or to prevent an escape. There was, however, a form of moral restraint or moral suasion in existence which served as a substitute for the essential element of "physical restraint." The casting off of that moral restraint is what is lacking in the case before us and this precludes us from finding appellant escaped from confinement.

All instances of appellant visiting with his wife occurred while he remained in a confinement status and were conducted with the permission of his escort (guard). Although the escorts were without authority to permit this deviation from the authorized work site or other destination, nevertheless, they approved of such visits. There is little in the record regarding the exact conversations held between appellant and his escorts, but apparently there was an understanding or agreement between them that appellant would be delivered to a certain location (home or plumbing shop) and he would remain there until the escort returned to take him elsewhere. The evidence suggests that appellant complied with these directions or limitations and never left the designated area during the absence of the escort. In other words, when the escort departed, appellant remained at the designated location under a certain moral suasion which served as a substitute for the physical restraint needed for the continuation of his state of confinement. *See United States v. Maslanich*, 13 M.J. 611, 614 n. 3 (A.F.C.M.R.1982); *United States v. Mobley*, 12 M.J. 1029, 1031 (A.C.M.R.1982). We find he did not "cast off" his restraint of confinement and therefore could not be found guilty of escape from confinement.[1] The finding of guilty of Charge I is disapproved and the specification is dismissed. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ We turn next to Charge II, in which it was alleged that appellant, as a principal, did, with intent to deceive, encourage and instigate his escort, Mr. Varner, to make false statements on divers occasions that Mr. Varner was going to take appellant to the base chapel. Here, too, we are not convinced beyond a reasonable doubt of appellant's culpability. Article 66(c), 77, UCMJ, 10 U.S.C. § 866(c). The government attempted to prove that, although Mr. Varner completed the prisoner release forms on divers occasions and listed the base chapel as their destination, after the fourth or fifth trip appellant knew their true destination was either his wife's apartment or the base plumbing shop and encouraged and instigated Mr. Varner to complete the form falsely. We disagree.

Appellant was within the confinement facility and was never present when Mr. Varner completed these forms; further, there was no evidence appellant ever told Mr.

---

1. We have considered whether there might be a lesser included offense which might be approved in this case, such as breaking restriction under Article 134, UCMJ. However, we find this inappropriate as appellant had not been ordered to be restricted to any specified limits.

Varner what destination to place on the forms. There was clearly an "understanding" between the two men that Mr. Varner would come pick up appellant each Sunday morning at the confinement facility. However, Mr. Varner said he never knew for sure exactly where appellant would want to go on any Sunday until after they were in the vehicle. Mr. Varner said that if at any time appellant said he wanted to go to the chapel, that is where he would have taken him on that day. It is true that, once they were together in the vehicle, Mr. Varner always expected appellant to request he be permitted to visit his wife, but Mr. Varner was never certain of their destination until after they departed the confinement facility. Therefore, in the absence of evidence of the existence of some type of agreement between appellant and Mr. Varner wherein the latter would sign out appellant on Sundays for the express purpose of taking him to see his wife, we find there is insufficient evidence to show appellant, "with intent to deceive, encouraged and instigated" Mr. Varner to sign a false statement. Not even Mr. Varner knew, until he spoke with appellant each Sunday in his vehicle, after signing him out of the confinement facility, whether the base chapel destination was true or false. These facts weigh heavily against a finding that Mr. Varner made any false statements, or that appellant induced Mr. Varner to falsely prepare the prisoner release forms. Accordingly, we find that appellant was not guilty as a principal. The findings of guilty of Charge II are set aside and the specification is dismissed.

■ Appellant also challenges the finding of guilty of Charge III, which alleges he induced and procured a certain witness, Ms. Evelyn Washington, to take an oath and to falsely testify at his previous court-martial that someone had unknowingly placed cocaine in a tray of cocktails which she and appellant consumed on the day before he participated in a squadron random urinalysis. As background, appellant points out that the defense counsel at his first trial informed the trial counsel of the possible defense of unknowing ingestion which would be corroborated by Ms. Washington. At his trial for use of cocaine appellant testified about his unknowing ingestion, but for some reason Ms. Washington was not called as a witness by the defense. Instead, the trial counsel called her and she provided testimony containing many inconsistencies with appellant's testimony, while at the same time attempting to corroborate his unknowing ingestion defense.

Sometime prior to appellant's second court-martial, Ms. Washington informed the trial counsel she had testified falsely regarding the unknowing ingestion because appellant threatened to report her own drug use to civilian authorities if she did not so testify. If the civilian authorities were notified, she was concerned they would try to remove her children from her custody.

Appellant questions the propriety of a conviction of subornation of perjury in a situation where the appellant does not call the alleged perjurious witness as a witness for the defense, but rather it is the government calling the witness to the stand. Based on this, he argues he neither induced nor procured Ms. Washington to provide false testimony, but we do not agree. "Induce and procure" are defined in the Manual as "to influence, persuade and cause." MCM, Part IV, paragraph 98c (1984). The discussion of the elements of this offense do not require that the person who suborns perjury actually be the party to call the witness who testifies falsely. MCM, Part IV, paragraphs 98 and 57 (1984). The rationale for this position is clearly set out in *United States v. Calvino*, 37 C.M.R. 730, 747 (N.C.M.R.1965) which dealt with a perjurer at an Article 32 investigation:

> We are not impressed by appellants' contention that perjury would not have occurred but for the acts of counsel for the government. We are not aware of any rule which relieves a suborner of criminal liability because the witness suborned was called by another party to the proceeding. Indeed, we are sure that when a witness in a criminal case is suborned by the accused in the case and the witness appears and presents his sub-

orned testimony, the accused is criminally liable for subornation of perjury without regard to who calls the suborned to testify.

We agree with this reasoning and find that appellant was properly found guilty of suborning perjury from Ms. Washington even though she was called as a witness by the trial counsel to give testimony under oath and that testimony was later proved to be false.[2]

Appellant also attacks the perjury charge on two additional grounds: that Ms. Washington's testimony should be rejected as unreliable, and that the military judge erroneously instructed the court members that Ms. Washington's testimony at the first court-martial was material. We have considered both of these issues and find them to be without merit. Article 66(c), UCMJ; MCM, Part IV, paragraph 57c(2)(b) (1984).

 Having set aside the findings of guilty of the specifications of two of the three Charges, we are confident we can fairly determine the sentence that would have been adjudged absent the convictions we have set aside. *United States v. Sales,* 22 M.J. 305 (C.M.A.1986). The maximum punishment for the offense of subornation of perjury is a dishonorable discharge, confinement for 5 years and total forfeitures. The sentence imposed at this second court-martial was a bad-conduct discharge and confinement for 1 year. We find appropriate a sentence of a bad-conduct discharge. Article 66(c), UCMJ.

The findings of guilty, as modified, and the sentence as reassessed, are correct in law and fact and, on the basis of the entire record are

AFFIRMED.

Judges RIVES and MILLS concur.

2. Federal authority for this same position is found in: *United States v. Brumley,* 560 F.2d 1268 (5th Cir.1977); *Petite v. United States,* 262 F.2d 788 (4th Cir.1959); *Culwell v. United States,* 194 F.2d 808 (5th Cir.1952); *United States v. Henderson,* 185 F.2d 189 (7th Cir.1950); *Cohen v. United States,* 214 F. 23 (9th Cir.1914).