UNITED STATES, Appellee

v.

William STANDIFER, Jr., Airman Basic
U.S. Air Force, Appellant.

No. 93–0255.
CMR No. 29171.

U.S. Court of Military Appeals.

Argued Jan. 5, 1994.

Decided Sept. 22, 1994.

For Appellant: *Captain Eric N. Eklund* (argued); *Lieutenant Colonel Frank J. Spinner, Captain David D. Jividen* (on brief); *Colonel Terry J. Woodhouse.*

For Appellee: *Captain Jules D. Silberberg* (argued); *Colonel Jeffery T. Infelise, Colonel Richard L. Purdon, Lieutenant Colonel Mark C. Ramsey,* USAFR (on brief).

*Opinion of the Court*

GIERKE, Judge:

A general court-martial composed of officer members convicted appellant, contrary to his pleas, of escape from confinement, encouraging and instigating another to sign

false official statements, and suborning another to commit perjury, in violation of Articles 95, 107, and 134, Uniform Code of Military Justice, 10 USC §§ 895, 907, and 934, respectively. The approved sentence provided for a bad-conduct discharge and confinement for 12 months. The Court of Military Review set aside the convictions of escape from confinement and encouraging another to make false official statements, but affirmed the conviction of suborning perjury. That court reassessed the sentence to include only a bad-conduct discharge. 35 MJ 615, 617, 618, 619 (1992).

We granted review of the following issues:

## I

WHETHER THE AFFIRMED FINDINGS OF GUILTY TO THE SUBORNATION OF PERJURY CHARGE AND SPECIFICATION ARE LEGALLY INSUFFICIENT WHEN IT WAS TRIAL COUNSEL, AND NOT APPELLANT, WHO BOTH CALLED THE WITNESS TO THE STAND AT APPELLANT'S PREVIOUS COURTS–MARTIAL AFTER APPELLANT RESTED HIS CASE–IN–CHIEF AND THEN AFFIRMATIVELY ARGUED THE WITNESS'S TESTIMONY WAS PERJURED IN ORDER TO OBTAIN A CONVICTION AGAINST APPELLANT.

## II

WHETHER THE MILITARY JUDGE ERRED WHEN, WHILE INSTRUCTING THE MEMBERS ON AN ELEMENT OF THE SUBORNATION OF PERJURY CHARGE, HE ADVISED THAT SHOULD THEY FIND THAT A PRIOR FALSE STATEMENT WAS MADE, THEN, AS A MATTER OF LAW, IT WAS MATERIAL.

We hold that, under the particular facts of this case, the evidence is legally insufficient to establish the offense of suborning perjury. Accordingly we reverse. In view of this holding, we need not reach Issue II.

On May 22, 1990, previous to the court-martial currently before us, appellant was convicted of wrongful use of cocaine and sentenced to a bad-conduct discharge, confinement for 7 months, and reduction to E–1. *See* 31 MJ 742, 743 (AFCMR 1990). At that court-martial, following the Government's case-in-chief, appellant testified that someone had placed cocaine in his drink at a birthday party for a Ms. Evelyn Washington without his knowledge. The defense then rested its case.

In rebuttal, the trial counsel called Ms. Washington "as a hostile witness." Ms. Washington previously had been listed as a defense witness and was unknown to the prosecution prior to this disclosure. In an interview prior to trial, Ms. Washington told the trial counsel that appellant had innocently ingested cocaine at a party in which the drinks had been spiked with cocaine. She reiterated this story in her "rebuttal" testimony. However, the trial counsel, who apparently had investigated this story and her background, accused her of lying and questioned her about her previous use of drugs, use of an alias, and arrests for prostitution, among other things. The trial counsel used Ms. Washington's testimony about the party to contradict appellant's testimony on several particulars and then argued that appellant and Ms. Washington had concocted their story of innocent ingestion. *See* 31 MJ at 743 (setting out trial counsel's argument that Ms. Washington and appellant were liars).

After appellant's first court-martial conviction, Ms. Washington informed the prosecutor that "she had testified falsely regarding" appellant's claim of innocent ingestion "because appellant threatened to report her own drug use to civilian authorities if she did" not lie on his behalf. 35 MJ at 618. Thereafter, appellant was charged and convicted of suborning the perjured testimony of Ms. Washington.

At the second court-martial, Ms. Washington testified as a prosecution witness regarding the alleged subornation of perjury. She testified that appellant knowingly used rock cocaine at the party. When appellant tested positive on a urinalysis, he told Ms. Washington that he wanted her to testify that someone had spiked their drinks with cocaine

without appellant's knowledge. Ms. Washington testified further that appellant threatened to "call the authorities and have them come get my kids, because they did use the cocaine in my house." Ms. Washington testified that she and appellant "made up the story" and that she expected to be called as a defense witness. Finally, she testified that she lied under oath when called by the prosecution to testify.

The defense presented no evidence to contradict Ms. Washington's testimony. The only defense evidence on the subornation of perjury was a stipulation of fact reciting that Ms. Washington was not called as a witness by the defense counsel but was called as a rebuttal witness by the trial counsel.

The military judge had instructed the members on the elements of the offenses prior to counsel's opening statements and presentation of evidence.

During a hearing on proposed instructions on findings, the military judge had the following discussion with counsel about lesser-included offenses (LIO):

MJ: ... I didn't instruct on LIOs when I went through elements, and I, once again, does either side believe an LIO is raised by the facts of this case?

TC: (No response.)

DC: (No response.)

MJ: No?

DC: No, sir. Defense does not believe—

MJ: Okay.

(The trial counsel was conferring with the assistant trial counsel.) Trial counsel?

TC: The government does not see any LIOs—

MJ: Okay.

TC: —raised by the evidence.

MJ: Like I said, this isn't your final cut at this, you know, we're just, okay....

After the military judge instructed the members on the elements of the offenses without any reference to LIOs, neither side made any objections or requests for additional instructions.

Appellant now argues that he did not suborn perjury because it was the prosecution who called Ms. Washington to testify under oath at appellant's first court-martial after he had declined to do so. The Government argues that an accused may be convicted of subornation of perjury regardless of who actually calls the suborned witness. The Government further argues that appellant's position would "giv[e] the suborner of perjury a free hand in inducing perjury from Government witnesses...." Answer to Final Brief at 3.

The standard of review for legal sufficiency of the evidence supporting a conviction challenged on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ Subornation of perjury is "intentionally causing perjury to be committed by another." R. Perkins and R. Boyce, *Criminal Law* 524 (3d ed. 1982).

The elements of subornation of perjury are as follows:

(1) That the accused induced and procured a certain person to take an oath or its equivalent and to falsely testify, depose, or state upon such oath or its equivalent concerning a certain matter;

(2) That the oath or its equivalent was administered to said person in a matter in which an oath or its equivalent was required or authorized by law;

(3) That the oath or its equivalent was administered by a person having authority to do so;

(4) That upon the oath or its equivalent said person willfully made or subscribed a certain statement;

(5) That the statement was material;

(6) That the statement was false;

(7) That the accused and the said person did not then believe that the statement was true; and

(8) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the

armed forces or was of a nature to bring discredit upon the armed forces. Para. 98b, Part IV, Manual for Courts-Martial, United States, 1984.

" 'Induce and procure' means to influence, persuade, or cause." Para. 98c. The narrow question to be decided in this case of first impression is whether appellant influenced, persuaded, or caused Ms. Washington "to take an oath ... and to falsely testify" when the trial counsel elected to have her take an oath to testify as a "rebuttal" witness in order to argue that the testimony of both appellant and Ms. Washington was false.

■ To answer this, we must address what is meant by that part of the aforementioned element requiring that the accused "induced and procured a certain person to take an oath or its equivalent and to falsely testify...." Appellant argues that, by electing not to call Ms. Washington as a defense witness, appellant did not cause her to take an oath and testify. However, the Government's position is that proof of the inducement "to take an oath ... and to falsely testify" is satisfied by proof that the accused secured the agreement of a witness to testify falsely under oath. For the reasons set out below, we decline to adopt the Government's interpretation of the nature of proof required for this element.

First, the literal language of that element requires an accused to induce and procure a person to do two things: 1) "to take an oath or its equivalent"; *and* 2) "to falsely testify...." The crime is not completed until the person so procured actually takes the oath and makes a knowingly false statement. Para. 98b(2)–(7). To only require proof that the accused caused a witness to agree to falsely testify under oath is to contravene the plain meaning of an element of the charged offense.

Second, the Government's position blurs the distinction between two separate military offenses. The Article 134 offense of obstruction of justice already punishes any inducement of a potential witness to falsely testify. *See* para. 96b and c, Part IV, Manual, *supra* (obstruction of justice includes wrongfully influencing or intimidating a witness or other-

wise obstructing the due administration of justice). *See also United States v. Guerrero*, 28 MJ 223, 226–27 (CMA 1989). On the other hand, since the prohibition against suborning perjury requires a tampered witness to lie under oath, it only punishes the actual procurement of perjury. *See* para. 98b, Part IV. This is consistent with the distinction between the federal statutes prohibiting subornation of perjury and obstruction of justice. *Compare* 18 USC § 1622 ("Whoever procures another to commit any perjury is guilty of subornation of perjury.") *with* 18 USC § 1512 ("Whoever knowingly ... threatens ... another person ... with intent to ... influence ... the testimony of any person in an official proceeding" is guilty of tampering with a witness.). *See Falk v. United States*, 370 F.2d 472 (9th Cir.) (obstruction of justice includes any corrupt endeavor to procure perjury), *cert. denied*, 387 U.S. 926, 87 S.Ct. 2044, 18 L.Ed.2d 982 (1967).

■ Finally, the gravamen of the offense of perjury, and by extension, subornation of perjury, "lies in the 'misleading of the court, jury, or person holding the proceeding.' " *See United States v. Byard*, 29 MJ 803, 809 (ACMR 1989), *citing* 60A Am Jur 2d *Perjury* § 1 (1988). Simply securing the agreement of another person to testify falsely without causing that person to take an oath and testify would not mislead the court. At most, procuring an agreement of a prospective witness to testify falsely might constitute an attempt to suborn perjury. *See United States v. Johnson*, 27 CMR 752 (ABR 1958); *Commonwealth v. Billingsley*, 357 Pa. 378, 54 A.2d 705 (1947). Since the evil the offense is designed to prevent is the corruption of the trial itself by false testimony, we hold that there must be proof that an accused charged with suborning perjury corrupted the judicial process. This not only requires proof that the accused influenced a certain person to testify falsely, but also requires proof that the accused caused that person "to take an oath ... and to testify falsely," para. 98b(1), Part IV, in order to mislead the court.

This holding does not mean that an accused must call the witness who falsely testifies. We note that no military or federal

cases (based on the federal counterpart, 18 USC § 1622) have interpreted this offense to require that the party who suborns perjury must be the party who calls the witness who testifies falsely. Where an accused knows or should reasonably believe that his procurement of a person to falsely testify would cause another party or the court to unwittingly call a potential perjurer to the stand, the accused has, in effect, "caused" that person to take an oath and to falsely testify. Cf. *United States v. Calvino,* 37 CMR 730 (NBR 1965). Here there is no indication that appellant considered Ms. Washington as anything beyond a potential defense witness who would corroborate his testimony that there was a birthday party at which one of his drinks was spiked.

In *Calvino* the Navy Board of Review affirmed the convictions of three accused who were charged with suborning perjury. The accused had obtained witnesses who provided false alibi testimony during an Article 32, UCMJ, 10 USC § 832, investigation. The Navy Board of Review held that the accused were properly convicted of suborning perjury despite the fact that perjury would not have occurred but for the acts of counsel for the Government. 37 CMR at 747. However, the Board in *Calvino* pointed out that the Government was required to call the alibi witnesses to make a thorough and complete investigation and opined that "the three accused were well aware that the alibi witnesses were to be called to testify before the Article 32 investigation." 37 CMR at 747.

In that respect, *Calvino* is similar to the federal cases cited by the Court of Military Review—35 MJ at 619 n. 2. Although none of those cases specifically addressed this issue, each case involves an accused who knew and expected, based on the type of proceeding, that the witnesses he induced to falsely testify would probably take the stand no matter who called them. Accordingly, the accused in each case was directly and solely responsible for misleading the court and contaminating the trial process with false testimony. Under the facts of those cases, the accused procured the perjurer "to take an oath" with the intent to mislead the court once the perjurer was called to the stand.

*See, e.g., Culwell v. United States,* 194 F.2d 808 (5th Cir.1952) (defendant induced main government witness to lie in case-in-chief to surprise of prosecutor); *United States v. Henderson,* 185 F.2d 189 (7th Cir.1950) (defendant induced main government witness to lie at hearing on motion to nolle prosequi); *Cohen v. United States,* 214 F. 23 (9th Cir.) (attorney induced witness to lie at a preliminary hearing before a commissioner), *cert. denied,* 235 U.S. 696, 35 S.Ct. 199, 59 L.Ed.2d 430 (1914).

Unlike the accused in those cases, appellant in the instant case solicited a potential exculpatory witness to testify falsely on his behalf, but had no reason to believe that the witness would be called to falsely testify by the prosecution. Here, in an adversarial context, Ms. Washington's testimony would be completely irrelevant to the Government's case-in-chief regardless of its truth or falsity. Her testimony would be relevant only in corroborating or rebutting appellant's defense. She, in fact, was not called in the Government's case-in-chief.

In this case trial counsel called Ms. Washington for the express purpose of showing that the testimony concerning appellant's innocent ingestion of cocaine was false. The record reflects that trial counsel called Ms. Washington in "rebuttal" to allow her to lie in order to show that she had collaborated with appellant to concoct a story that had too many inconsistencies to be true. Trial counsel requested Ms. Washington to come to the stand immediately after the defense rested. He did not hesitate to determine whether Ms. Washington had changed her story which he knew generally corroborated appellant's testimony. He requested that she be considered a "hostile witness" prior to any questioning. He was armed with material not only to attack the story about the party, but also to discredit her overall credibility. He specifically accused her of lying and collaborating with appellant and argued this to the panel. So with more than a reasonable suspicion that Ms. Washington would lie, trial counsel elected to elicit and intentionally ben-

efited from Ms. Washington's false testimony *after* appellant rested his case.

Under these circumstances, trial counsel, not appellant, caused Ms. Washington to testify. Trial counsel deliberately caused Ms. Washington to do what appellant had declined to have her do. Absent waiver of his right against self-incrimination and his attorney/client privilege, appellant was not in a position to make a retraction. Appellant did not call Ms. Washington as a witness and had no reason to believe that she would be called by the Government; thus, appellant could not be considered to have misled the court or contaminated the court-martial proceedings with the false testimony.

For these reasons, we decline to adopt the broad proposition set out in *Calvino* that "when a witness ... is suborned by the accused ... and the witness appears and presents his suborned testimony, the accused is criminally liable for subornation of perjury without regard to who calls the suborned to testify." 37 CMR at 747. The issue in any case involving subornation of perjury is not who called the witness, but whether the perjured testimony was offered as truthful and thereby misled the court and corrupted the judicial process. To hold otherwise would create the irony of upholding a conviction of an accused for subornation of perjury in a given case even if the accused decides to forgo calling his own witness to *prevent* possible perjury.

We also reject the Government's argument that such an interpretation of this element of the offense would "giv[e] the suborner of perjury a free hand in inducing perjury from Government witnesses...." Answer to Final Brief at 3. Such attempts would clearly be prosecutable as obstruction of justice under Article 134. Similarly, tampering with potential witnesses is a separate crime under federal law. *See* 18 USC § 1512. Accordingly, we hold that the evidence was legally insufficient to support appellant's conviction for suborning perjury.

■ Our holding as to the legal insufficiency of the evidence of the offense charged does not, however, end our inquiry. If the evidence is sufficient to establish an included

offense, this Court may affirm the included offense, provided that it does not do so on a theory not presented to the trier of fact. *See United States v. McKinley*, 27 MJ 78, 79 (CMA 1988) ("[A]n appellate court may disapprove a finding because proof of an essential element is lacking or, ... may substitute a lesser-included offense for the disapproved findings.... even if the lesser-included offense was neither considered nor instructed upon at the trial of the case."); *United States v. LaFontant*, 16 MJ 236 (CMA 1983) (Court of Military Review could affirm included offense of attempted possession of drugs where accused was convicted of possession). *Cf. Chiarella v. United States*, 445 U.S. 222, 236, 100 S.Ct. 1108, 1118–19, 63 L.Ed.2d 348 (1980) (appellate court cannot affirm conviction on the basis of a theory not presented to the jury).

■ Our review of the elements of related offenses convinces us that the offense of obstructing justice, in violation of Article 134, is included in the offense of subornation of perjury. *See United States v. Teters*, 37 MJ 370, 376 (CMA 1993) (included offenses determined by examining their elements), *cert. denied*, —— U.S. ——, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994). Although obstruction of justice is not specifically listed as a lesser-included offense of subornation of perjury, the lists of included offenses "are not all-inclusive." Para. 2b(4), Part IV, Manual, *supra.*

The elements of subornation of perjury have already been set out herein. *See* 40 MJ at 442. The elements of obstructing justice are as follows:

(1) That the accused wrongfully did a certain act;

(2) That the accused did so in the case of a certain person against whom the accused had reason to believe there were or would be criminal proceedings pending;

(3) That the act was done with the intent to influence, impede, or otherwise obstruct the due administration of justice; and

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the

armed forces or was of a nature to bring discredit upon the armed forces. Para. 96b, Part IV, Manual, *supra.*

■ Conviction of either of the above offenses would be consistent with the theory of the case presented to the triers of fact by the prosecution. The prosecution theory regarding subornation of perjury was straightforward: appellant approached Ms. Washington and threatened her if she refused to lie, and she ultimately did lie under oath at appellant's first court-martial. That same theory also applies to the included offense of obstructing justice.

Comparison of the elements of the two offenses reflects that the first three elements of obstructing justice are included in the first element of subornation of perjury. The fourth and final element of obstructing justice is the same as the final element of subornation of perjury. The difference between the two offenses is that subornation of perjury requires proof that the accused corrupted the factfinding process by causing the false testimony to be given under oath; whereas obstruction of justice does not require proof that an oath was administered, that false testimony was given, or that justice actually was obstructed. Para. 96c. Accordingly, we hold that, under the "elements" test adopted in *Teters,* obstruction of justice is included in the offense of subornation of perjury. Since the included offense is based on the same theory as was presented to the factfinders on the greater offense, this Court may affirm the included offense notwithstanding the legal insufficiency of the proof of the greater offense.

The maximum punishment for obstructing justice is the same as the maximum punishment for subornation of perjury. *Compare* para. 96e *with* para. 98e, Part IV. Accordingly, there is no reasonable possibility of prejudice as to sentence in this case.

The decision of the United States Air Force Court of Military Review as to Charge III and its specification is reversed to the extent that it affirms a finding of guilty of an offense greater than obstruction of justice, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. In all other respects the decision of that court is affirmed.

Judges CRAWFORD and WISS concur.

COX, Judge, joined by SULLIVAN, Chief Judge (dissenting):

I would affirm. I need only ask three questions:

1 —What did appellant do?
   Answer: He "induced" Ms. Washington to testify falsely.
2 —Was it foreseeable that she would testify?
   Answer: Yes. Appellant listed her as a witness.
3 —What did Ms. Washington do?
   Answer: She testified falsely.

That's enough.

In any event, I am concerned that we have substituted another separate and distinct offense, *obstruction of justice,* under the rubric of a lesser-included offense (LIO). Neither the Government, appellant, the military judge, nor the Court of Military Review has ever suggested this remedy. Indeed, it may be seen from the record that the parties at trial agreed that there were no LIOs. 40 MJ at 442. *United States v. McKinley,* 27 MJ 78 (CMA 1988).

At a minimum, we should give appellant an opportunity to be heard by inviting a brief on the question. Perhaps appellant can persuade a majority to at least reexamine this aspect of the opinion via a petition for reconsideration.