# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Airman First Class JEFFERSON R. McFADDEN
## United States Air Force

## ACM 38597

## 18 November 2015

Sentence adjudged 19 December 2013 by GCM convened at McConnell Air Force Base, Kansas. Military Judge: Joshua E. Kastenberg (sitting alone).

Approved Sentence: Dishonorable discharge, confinement for 20 years, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Major Jennifer J. Raab; Major Thomas A. Smith; and Major Anthony D. Ortiz.

Appellate Counsel for the United States: Captain Richard J. Schrider and Gerald R. Bruce, Esquire.

Before

TELLER, ZIMMERMAN, and KIEFER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

KIEFER, Judge:

Appellant pled not guilty at trial by military judge alone to multiple specifications of attempted murder, robbery, assault, housebreaking, fleeing apprehension, and unlawful entry in violation of Articles 80, 122, 128, 130, and 134, UCMJ, 10 U.S.C. §§ 880, 922, 928, 930 and 934. Appellant was convicted of four specifications of robbery, two specifications of unlawful entry, one specification of fleeing apprehension, one specification of aggravated assault, and one specification of assault. Appellant was sentenced to reduction to the grade of E-1, forfeiture of all pay and allowances,

confinement for 20 years, and a dishonorable discharge. The convening authority approved the sentence as adjudged.

Appellant was implicated in a series of robberies in Wichita, Kansas. On 3 March 2013, Appellant robbed a Family Dollar store, assaulting an employee in the process. Civilian law enforcement officials responded, and Appellant fled to a nearby apartment building where he unlawfully entered the basement in an attempt to evade police. He was eventually apprehended. Through the use of DNA collected from Appellant and surveillance video, Appellant was linked to two previously unsolved robbery investigations. Appellant was transferred to military pretrial confinement on 22 April 2013, was arraigned on 5 August 2013, and tried from 16–19 December 2013 at McConnell Air Force Base, Kansas.

Appellant raises 11 assignments of error with regard to his findings and sentence, asserting that the military judge's exceptions and substitutions created a fatal variance; that the evidence was factually and legally insufficient; that the military judge failed to inquire into potential speedy trial violations; that the offense of fleeing apprehension under Article 134, UCMJ, was preempted; that the military judge granted him insufficient credit for illegal pretrial punishment; that his sentence was inappropriately severe; and that cumulative error prevented him from receiving a fair trial.[1]

*Findings by Exceptions and Substitutions and Fatal Variance*

Appellant maintains that the military judge created a fatal variance in convicting him by exceptions and substitutions of the lesser included offense (LIO) of aggravated assault by bodily harm based upon the charge of armed robbery by creating fear alleged in Specification 1 of the Second Additional Charge. The Government charged Appellant with robbery of CR within her home in violation of Article 122, UCMJ. The charge specifically alleged that the robbery was committed "by means of putting [CR] in fear with a firearm and a knife." The military judge found Appellant not guilty of the robbery, but guilty of an assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm in violation of Article 128, UCMJ. The military judge excepted the words "by means of putting her in fear with a firearm and a knife steal from the presence of [CR], against her will, some amount of money, the property of [CR]," and substituted the words "commit an assault upon [CR] by striking her with objects likely to produce death or grievous bodily harm to wit: a firearm and a knife." Appellant argues that these findings created a fatal variance.

"Whether there was a fatal variance is a question of law reviewed de novo." *United States v. Treat*, 73 M.J. 331, 335 (C.A.A.F. 2014). "When defense counsel fails

---

[1] The final five assignments of error as well as the factual and legal sufficiency claim pertaining to the aggravated assault are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

to object at trial, we review a military judge's findings by exceptions and substitutions for plain error." *Id.* (citing *United States v. Finch*, 64 M.J. 118, 121 (C.A.A.F. 2006)).

To prevail on a fatal variance claim, Appellant must show both that the variance was material and that the variance substantially prejudiced him. *United States v. Marshall*, 67 M.J. 418, 420 (C.A.A.F. 2009). A variance is material if it substantially changes the nature of the offense, increases the seriousness of the offense, or increases the punishment of the offense. *Id.* (quoting *Finch*, 64 M.J. at 121). "A variance can prejudice an appellant by (1) putting him at risk of another prosecution for the same conduct, (2) misleading him to the extent that he has been unable adequately to prepare for trial, or (3) denying him the opportunity to defend against the charge." *Id.* (quoting *United States v. Teffeau*, 58 M.J. 62, 67 (C.A.A.F. 2003)) (internal quotation marks omitted). "Where an offense is a lesser included offense of the charged offense, an accused is by definition on notice because it is a subset of the greater offense alleged." *United States v. Medina*, 66 M.J. 21, 27 (C.A.A.F. 2008). Accordingly, if the findings constitute a proper LIO of the charged offense, any variance is not fatal.

There is substantial authority for the proposition that aggravated assault is an LIO of robbery. The *Manual for Courts-Martial* lists assault with a dangerous weapon under Article 128, UCMJ, as an enumerated LIO of robbery under Article 122, UCMJ. *Manual for Courts-Martial, United States* (*MCM*), pt. IV, ¶ 47.d.(4) (2012 ed.). Similarly, other courts have found various types of assaults, including aggravated assaults with a dangerous weapon or other means or force likely to produce death or grievous bodily harm, to be LIOs of robbery. *See, e.g., United States v. Szentmiklosi*, 55 M.J. 487, 491 (C.A.A.F. 2001); *United States v. Jones*, 34 M.J. 1229, 1230 (N.M.C.M.R. 1992); *see also United States v. Calhoun*, 16 C.M.R. 311, 312 (A.B.R. 1954).

In evaluating whether one offense is a lesser included offense of another, courts apply an "elements test." *United States v. Wilkins*, 71 M.J. 410, 412 (C.A.A.F. 2012) (citing *United States v. Jones*, 68 M.J. 465, 468 (C.A.A.F. 2010)). "The test does not require that the 'offenses at issue employ identical statutory language.'" *Id.* (quoting *United States v. Alston*, 69 M.J. 214, 216 (C.A.A.F. 2010)).

Comparing the basic elements of Article 122, robbery, with Article 128, aggravated assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm, the only difference is that robbery requires a wrongful taking of property of some value of another. The third element of robbery requires "[t]hat the taking was by means of force, violence, or force and violence, or putting the person in fear of immediate or future injury to that person . . . ." *MCM*, pt. IV, ¶ 47.b.(3). The seventh element of robbery, if the offense was allegedly committed with a firearm, requires "[t]hat the means of force or violence or of putting the person in fear was a firearm." *MCM*, pt. IV, ¶ 47.b.(7).

By comparison, the elements of Article 128, assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm, are:

> (i) That the accused attempted to do, offered to do, or did bodily harm to a certain person;
>
> (ii) That the accused did so with a certain weapon, means, or force;
>
> (iii) That the attempt, offer, or bodily harm was done with unlawful force or violence; and
>
> (iv) That the weapon, means, or force was used in a manner likely to produce death or grievous bodily harm.

*MCM*, pt. IV, ¶ 54.b.(4)(a).

Appellant specifically asserts that Specification 1 of the Second Additional Charge "alleged a robbery by 'means of putting [CR] in fear with a firearm and a knife' but does not allege by means of force or violence." Although the elements of robbery preclude both taking accomplished by actual force as well as by putting the victim in fear of immediate or future injury, only one such manner was alleged in the charge. "The charge sheet itself gives content to [the general language of the statute], thus providing the required notice of what an accused must defend against." *United States v. Jones*, 68 M.J. 465, 472 (C.A.A.F. 2010). The military judge in this case substituted language convicting Appellant of aggravated assault by bodily harm, finding that Appellant committed the assault "by striking [CR] with objects likely to produce death or grievous bodily harm, to wit: a firearm and a knife." We apply the elements test in light of its purpose, testing whether Appellant had reason to be on notice of the elements of the LIO of which he stands convicted by examining the elements of the offense as it was reflected on the charge sheet. In this case, we find that Appellant was not on notice that he was required to defend against the charge of actual bodily harm to CR, and therefore the offense comprised by the language substituted by the military judge was not necessarily included in the charged offense.

Nevertheless, we may ourselves sustain a conviction to an LIO of aggravated assault by bodily harm as long as that LIO is based upon a theory presented to the military judge. "If the evidence is sufficient to establish an included offense, this Court may affirm the included offense, provided that it does not do so on a theory not presented to the trier of fact." *United States v. Standifer*, 40 M.J. 440, 445 (C.M.A. 1994). There is no question on the facts of this case that aggravated assault by offer is a lesser included offense of aggravated assault by bodily harm. However, to comply with the notice requirements discussed above, it must also be an LIO of the charged offense. Although

the language is not identical, the four elements of aggravated assault by offer, rather than bodily harm, are necessarily included in the two elements of robbery as alleged on the charge sheet. We find that the element of aggravated assault requiring the offer be done with unlawful force or violence was necessarily included in the element of the charged offense that Appellant placed the victim in fear with a firearm and a knife. Accordingly, we disapprove the finding of guilt to the offense of aggravated assault by bodily harm but affirm a finding of guilt to the lesser include offense of aggravated assault by offer as set out in the decretal paragraph below.

*Challenges to Legal and Factual Sufficiency of Various Specifications*

Appellant challenges the legal and factual sufficiency of specifications involving unlawful entry of CR's home, aggravated assault against CR, armed robbery of Little Caesar's, armed robbery of Dollar General and TG, and unlawful entry of BA's home.

This court reviews issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)) (internal quotation marks omitted). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001); *see also United States v. McGinty*, 38 M.J. 131, 132 (C.M.A. 1993).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington,* 57 M.J. at 399. The term reasonable doubt, however, does not mean that the evidence must be free from conflict. *United States v. Lips,* 22 M.J. 679, 684 (A.F.C.M.R. 1986). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

*1. Unlawful Entry of CR's Home*

Appellant challenges the legal and factual sufficiency of his conviction for Article 134, unlawful entry of CR's home. For this specification, the Government was required to prove beyond a reasonable doubt:

> (1) That [Appellant] entered the real property of [CR] . . . ;
>
> (2) That such entry was unlawful; and
>
> (3) That, under the circumstances, the conduct of [Appellant] was . . . of a nature to bring discredit upon the armed forces.

*MCM*, pt. IV, ¶ 111.b.

CR herself testified under oath that Appellant entered her house without permission. There was also ample evidence surrounding the entry and what occurred within the house that could lead a reasonable person to conclude that the entry was without authority and was of a nature to bring discredit upon the armed forces. Consequently, from a legal sufficiency standard, CR's testimony satisfies the elements of the charged offense.

The real focus of Appellant's argument is the credibility of CR and factual sufficiency. While Appellant may believe CR's testimony is untrustworthy, a factfinder, including our review under Article 66(c), UCMJ, 10 U.S.C. § 866(c), is free to come to a different conclusion. While we have the independent authority and responsibility to weigh the credibility of the witnesses in determining factual sufficiency, we recognize that the trial court saw and heard CR's testimony. *See United States v. Moss,* 63 M.J. 233, 239 (C.A.A.F. 2006) (stating it is the members' role to determine whether testimony is credible or biased).

We have considered the alleged inconsistencies, discrepancies, and bias in CR's testimony as advanced by Appellant. We note that testimony need not be completely consistent to still be sufficiently reliable to sustain a conviction, and we do not confine our analysis to merely the testimony of a single witness in performing our factual sufficiency review under Article 66, UCMJ. In this instance, the record contains testimony from other witnesses who observed CR's demeanor following the altercation with Appellant and photographs of CR's injuries and the crime scene consistent with CR's testimony of an altercation with Appellant. Considering all the evidence in the case and applying the appropriate standards, we are convinced of Appellant's guilt of unlawful entry into CR's home beyond a reasonable doubt.

*2. Lesser Included Offense of Aggravated Assault of CR*

Appellant challenges the legal and factual sufficiency of his conviction for an aggravated assault against CR.[2] To be found guilty of aggravated assault in this instance, the prosecution had to prove beyond a reasonable doubt:

> (i) That [Appellant] attempted to do, offered to do, or did bodily harm to [CR];
>
> (ii) That [Appellant] did so with a [knife and a firearm];
>
> (iii) That the attempt, offer, or bodily harm was done with unlawful force or violence; and
>
> (iv) That the [firearm and knife were] used in a manner likely to produce death or grievous bodily harm.

*MCM*, pt. IV, ¶ 54.b.(4)(a).

As discussed above, we approve only the finding of guilt to the LIO of aggravated assault by offer. CR's testimony satisfies all of the elements of that offense. Although she testified that Appellant struck her with the gun and knife which would constitute bodily harm, under the circumstances it was clear that she apprehended the harm just before it occurred. Based on the testimony of CR, there was no lawful justification for the assault. The only question is whether the use of the gun and knife was likely to produce death or grievous bodily harm.

Grievous bodily harm is defined as "serious bodily injury," including "fractured or dislocated bones, deep cuts, torn members of the body, serious damage to internal organs, and other serious bodily injuries." *MCM*, pt. IV, ¶ 54.c(4)(a)(iii). CR testified to being struck in the face with the knife which caused cuts and bleeding and to being struck in the head with the gun which rendered her unconscious. She also testified that Appellant held the knife to her throat as he walked her around the home looking for valuables. A reasonable person could conclude from this evidence that Appellant used the knife and gun in a manner likely to produce death or grievous bodily harm. Accordingly, the finding of guilt for the lesser included offense of aggravated assault by offer is legally sufficient.

Again the defense's primary challenge is that CR's testimony is not credible. As described with respect to the unlawful entry, while we do consider credibility with

---

[2] This issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

respect to factual sufficiency, we are convinced beyond a reasonable doubt of Appellant's guilt with respect to this offense.

## 3. Armed Robbery of Little Caesar's

Appellant challenges the legal and factual sufficiency of his conviction for armed robbery of Little Caesar's. For this specification the Government was required to prove the following elements beyond a reasonable doubt:

(1) That [Appellant] wrongfully took certain property from the person or from the possession and in the presence of a person named or described;

(2) That the taking was against the will of that person;

(3) That the taking was by means of force, violence, or force and violence, or putting the person in fear of immediate or future injury to that person . . . ;

(4) That the property belonged to a person named or described;

(5) That the property was of a certain or of some value; . . .

(6) That the taking of the property by the accused was with the intent permanently to deprive the person robbed of the use and benefit of the property[; and]

(7) That the means of force or violence or of putting the person in fear was a firearm.

*MCM*, pt. IV, ¶ 47.b.

The Government presented the testimony of multiple witnesses who testified to a man coming into the Little Caesar's store, showing a gun, demanding money, and placing those in the store in fear of immediate injury if they did not comply with his demands. They testified to the man unlawfully taking money from the Little Caesar's cash register. These witnesses provided similar accounts of the event and descriptions of the perpetrator. The Government also presented physical evidence including footwear, other clothing, and shoe prints, along with video evidence to link Appellant to the crime. The testimony of the multiple witnesses satisfied the elements of the offense of robbery under Article 122 and is legally sufficient to sustain the conviction.

Further, upon review of all of the evidence in the case, we are convinced beyond a reasonable doubt of Appellant's guilt with respect to the armed robbery of Little Caesar's on or about 9 February 2013.

### 4. *Armed Robbery of Dollar General and TG*

Appellant challenges the legal and factual sufficiency of his conviction for armed robbery of Dollar General and TG. TG was a clerk in the store at the time of the incident. For this specification, the Government was required to prove the same basic elements as required for Assignment of Error IV, the armed robbery of Little Caesar's.

The Government presented the testimony of TG, who testified to Appellant holding him at gun point and demanding money from the Dollar General cash register as well as TG's personal money. TG testified to the fear he experienced based on how Appellant showed and used the gun, which fear was reasonable based on all of the facts and circumstances. TG also testified to Appellant taking money from the cash register and TG's wallet without lawful permission. The Government also presented physical and video evidence linking Appellant to the crime. TG's testimony and the physical evidence satisfied all of the elements of the armed robberies against both Dollar General and TG and are legally sufficient to sustain the conviction.

Further, we are convinced based on our review of the entire record of Appellant's guilt beyond a reasonable doubt with respect to these armed robberies.

### 5. *Unlawful Entry of BA's Home*

In Assignment of Error VIII, Appellant challenges the legal and factual sufficiency of his conviction for unlawful entry of BA's home. BA was the owner of a residence that was occupied by SL on or about 3 March 2013. Appellant was arrested by civilian law enforcement officers in the basement of this residence. Appellant alleges that the evidence is factually and legally insufficient to sustain his conviction for this offense. Primarily, Appellant argues that SL gave him permission to enter the basement of this dwelling by the statement, "You better run to a basement." Appellant argues that this statement constituted permission for Appellant to take refuge in the home's basement while fleeing apprehension. However, taking all reasonable inferences in the light most favorable to the prosecution in our legal sufficiency analysis, this statement does not constitute permission to enter the dwelling, especially in the context of the entirety of SL's testimony. Although not specifically raised by Appellant, we have also considered whether Appellant could have been under a reasonable mistake of fact as to permission to enter the basement, but upon review of the entirety of SL's testimony, we find that such conclusion, even if subjectively believed by Appellant, is not objectively reasonable.

Further, SL also testifeid that at some point Appellant's foot was inside the door of the house to the point that she had to force the door closed. An entry for the offense of unlawful entry under Article 134 consists of "any part of the body, even the finger." *MCM*, pt. IV, ¶ 55.c(3). Given this definition, Appellant's foot in the doorway could constitute an unlawful entry aside from anything that happened with respect to the basement.

We have reviewed the entirety of SL's testimony as well as the other evidence regarding Appellant's entry into and arrest in the basement, and we are convinced beyond a reasonable doubt of Appellant's guilt with respect to an unlawful entry of BA's home.

*Rule for Courts-Martial 707 Speedy Trial*

Appellant argues that the military judge erred by failing to inquire into whether Appellant received a speedy trial under Rule for Courts-Martial (R.C.M.) 707.[3] Appellant concedes that this claim was never raised during his trial. Nor does Appellant claim he is entitled to relief on any other basis such as Article 10, UCMJ, or the 5th or 6th Amendments of the Constitution.[4] Essentially, Appellant for the first time on appeal raises solely an R.C.M. 707 speedy trial claim.

The R.C.M.s make clear that the burden is on appellants and not military judges to raise speedy trial issues at trial and that a failure to do so may result in waiver. *See* R.C.M. 707(e), Discussion; R.C.M. 905(e), 907(b)(2)(A). A military judge is not required to conduct a speedy trial inquiry with an appellant and failure to conduct such an inquiry is not error. *United States v. Berg*, ACM 36989, unpub. op. at 4 (A.F. Ct. Crim. App. 24 September 2008). Consequently, by failing to raise an R.C.M. 707 speedy trial issue prior to final adjournment, Appellant forfeited this issue.

When an issue is forfeited by failure to raise it during the trial,[5] it is subject only to plain error review. *United States v. Harcrow*, 66 M.J. 154, 156 (C.A.A.F. 2008). Under a plain error analysis, the appellant must demonstrate that "(1) there was error; (2) the error was plain and obvious; and (3) the error materially prejudiced a substantial right of the [appellant]." *United States v. Clifton*, 71 M.J. 489, 491 (C.A.A.F. 2013) (citing *United States v. Powell*, 49 M.J. 460, 464–65 (C.A.A.F. 1998)). The appellant bears the burden of establishing plain error. *United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007).

Even if we were to evaluate an R.C.M. 707 speedy trial issue for the first time on appeal based on the record before us, Appellant's challenge would fail. Appellant alleges

---

[3] This issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[4] U.S. CONST. amend. V, VI.

[5] In the absence of any evidence that Appellant knowingly declined to assert this claim at trial, we consider it forfeited and not waived.

that he entered civilian pretrial confinement on 3 March 2013 based on an off-base arrest, by civilian police officers, for an offense committed off base. He later entered military pretrial confinement on 22 April 2013 and was "brought to trial" through arraignment on 5 August 2013. A period of 8 days from 24 June 2013 through 1 July 2013 was excluded for speedy trial purposes.

Our superior court "has long recognized that the military is not accountable for the time an accused serves in civilian confinement as a result of civil offenses." *United States v. Bragg*, 30 M.J. 1147, 1147 (A.F.C.M.R. 1990); *see also United States v. Grom,* 21 M.J. 53, 56 (C.M.A.1985); *United States v. Reed,* 2 M.J. 64, 67 (C.M.A. 1976); *United States v. Williams,* 30 C.M.R. 81 (C.M.A. 1961). Evaluating the facts presented by Appellant on appeal, because he was arrested off base, by civilian authorities for what was at that time a civil offense, his R.C.M. 707 speedy trial clock for any military offenses did not begin until he was placed in military pretrial confinement on 22 April 2013. Appellant was arraigned on 5 August 2013, which constitutes a period of 105 days. This does not include the 8 days excluded from speedy trial consideration. Consequently, we find that Appellant has failed to show that there was error, or that any error was plain or obvious.

*Article 95 Preemption of Article 134 Offense of Fleeing Apprehension*

Appellant argues on appeal for the first time that his conviction for fleeing apprehension under Article 134 was improper because the Article 134 offense is preempted by Article 95.[6] While Article 95 does include an offense for "fleeing apprehension," it defines those authorized to apprehend by reference to R.C.M. 302. Under R.C.M. 302(b), only military law enforcement officials, and commissioned, warrant, petty, and non-commissioned officers are authorized to apprehend military members for military offenses, other than desertion. Civilian law enforcement officers may arrest military members for commission of civil criminal offenses; however, this does not trigger Article 95.

Our sister court has held on multiple occasions that "resistance of apprehension by nonmilitary affiliated civilian law enforcement officers for nonmilitary offenses was not subject to court-martial under Article 95." *United States v. Rhodes*, 47 M.J. 790, 793 (A. Ct. Crim. App. 1998); *see also United States v. Williams*, 26 M.J. 606, 609 (A.C.M.R. 1988) ("[W]e find no evidence that Congress intended that Article 95 should cover more than resisting apprehension or escape from custody of those with military authority.").

The distinction with an Article 134 offense for fleeing apprehension is the requirement to prove conduct prejudicial to good order and discipline or of a service discrediting nature. In this case, the Government alleged this element and presented

---

[6] This issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

testimony and evidence that Appellant's fleeing apprehension by civilian law enforcement officers was service discrediting. The Government presented the testimony of multiple witnesses involved in the hunt for Appellant throughout the greater Wichita area, including the officer who witnessed the robbery and first engaged Appellant in the store and then had to chase him with several other law enforcement officers. The Government also provided testimony of the disturbance Appellant's fleeing created in the local community. The military judge found Appellant guilty based on the elements of the Article 134 offense, and there is nothing in the record that indicates this finding is improper or in error.

Accordingly, we find the military judge did not err in finding Appellant guilty of an Article 134 offense for fleeing apprehension of civilian law enforcement officers on or about 3 March 2013.

*Pretrial Confinement Credit*

Appellant argues that the military judge erred in not granting sufficient pretrial confinement credit in light of the conditions of his confinement.[7] Appellant was granted 291 days of *Allen* credit[8] for the time he spent in pre-trial confinement. The military judge also granted him 177 additional days of credit toward his sentence for the time he spent in maximum security based on conditions that the military judge believed exceeded the minimum conditions necessary to protect society and ensure Appellant's presence at trial. We have reviewed Appellant's submissions and arguments at trial as well as on appeal. There is nothing in the record that indicates the judge's ruling granting 177 days of additional confinement credit was insufficient to address the conditions of pretrial confinement that the military judge believed warranted additional credit.

Consequently, we find no error in the military judge awarding 177 additional days of confinement credit based on the facts and circumstances of this case.

*Sentence Appropriateness*

Appellant next argues that his sentence was inappropriately severe.[9] This court "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). We review sentence appropriateness de novo, employing "a sweeping Congressional mandate to ensure a fair and just punishment for every accused." *United States v. Baier*, 60 M.J. 382, 384 (C.A.A.F. 2005) (quoting *United States v. Bauerbach*, 55 M.J. 501, 504 (Army

---

[7] This issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).
[8] This term refers to day-for-day credit for lawful pretrial confinement, pursuant to *United States v. Allen*, 17 M.J. 126 (C.M.A. 1984).
[9] This issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

Ct. Crim. App. 2001)) (internal quotation marks omitted). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (citing *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982)). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

Appellant was convicted of multiple specifications of robbery and unlawful entry, as well as specifications of aggravated assault, assault, and fleeing apprehension. After consolidating certain specifications for sentencing, Appellant faced a maximum sentence of reduction to E-1, total forfeiture of pay and allowances, 50 years and 6 months of confinement, and a dishonorable discharge. The military judge sentenced Appellant to reduction to the grade of E-1, total forfeiture of pay and allowances, 20 years of confinement, and a dishonorable discharge. In terms of the period of confinement, Appellant was sentenced to less than half of the authorized sentence. We have considered all of the evidence in the record including all information submitted by Appellant. We have also considered the very serious nature of the offenses of which Appellant has been convicted, the victims of his crimes, and the dangerous nature of the events and circumstances of this case. Considering all of these factors, we do not find the sentence to be inappropriately severe, especially given the maximum sentence authorized in this case.

*Cumulative Errors and Fair Trial*

Appellant finally argues that the cumulative effect of errors in his case deprives us of the ability to be confident he received a fair trial.[10] We have reviewed all of the assignments of error raised by Appellant both individually as well as for any cumulative effect. We find merit only in Appellant's assignment of error as to the conviction for an LIO of robbery, for which appropriate relief is available. We find no merit to Appellant's other assignments of error either individually or collectively warranting any relief beyond that already discussed.

*Sentence Reassessment*

Having disapproved the conviction for the offense of aggravated assault by bodily harm, we must determine whether we can reassess the sentence. This court has "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). Our superior court has repeatedly held that if we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least

---

[10] This issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986). This analysis is based on a totality of the circumstances with the following as illustrative factors: dramatic changes in the penalty landscape and exposure, the forum, whether the remaining offenses capture the gravamen of the criminal conduct, whether significant or aggravating circumstances remain admissible and relevant, and whether the remaining offenses are the type that we as appellate judges have experience and familiarity with to reliably determine what sentence would have been imposed at trial. *Winckelmann*, 73 M.J. at 15–16.

Here, there is no change in the penalty landscape from our action affirming only the LIO of aggravated assault by offer. The maximum punishment would remain the same. The LIO captures the gravamen of the misconduct and retains the admissibility and relevance of the surrounding circumstances. We also find that the remaining offenses are of the type with which we have experience and familiarity as appellate judges to determine the sentence that would have been imposed. We have considered the totality of the circumstances and reassess the sentence to the same sentence approved by the convening authority.

*Unreasonable Post-Trial Delay*

Though not raised as an issue on appeal, we note the overall delay of more than 18 months between the time of docketing and review by this court is facially unreasonable. *See United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Article 66(c), UCMJ, empowers the service courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002). Utilizing the four-factor test adopted in *Moreno,* we find the delay did not violate Appellant's due process rights. *See Moreno*, 63 M.J. at 135. The delay, while presumptively unreasonable, did not exceed the *Moreno* standard by more than 30 days. Appellant has not asserted he was prejudiced.

We have also considered whether, even in the absence of prejudice, sentence relief is justified based upon the delay. *United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006); *Tardif*, 57 M.J. at 224. In *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), we identified a list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Those factors include how long the delay exceeded appellate review standards, the reasons for the delay, whether the government acted with bad faith or gross indifference, evidence of institutional neglect, harm to the appellant or to the institution, whether relief is consistent with the goals of both justice and good order and discipline, and whether this court can provide any meaningful relief. *Id*. No single factor is dispositive and we may consider other factors as appropriate. *Id*.

After considering the relevant factors in this case, we determine that no relief is warranted. We find there was no bad faith or gross negligence in the post-trial processing. The record of trial in this case comprised ten volumes, and Appellant raised numerous assignments of error. We find no evidence of harm to the integrity of the military justice system. We have the authority to tailor an appropriate remedy without giving Appellant a windfall. *See Tardif*, 57 M.J. at 225. We have expressly considered whether we should reduce some or all of Appellant's sentence. Based on our review of the entire record, we conclude that sentence relief under Article 66, UCMJ, is not warranted.

*Conclusion*

The finding of guilty of Specification 1 of the Second Additional Charge, is set aside, but we affirm Appellant's conviction to the lesser included offense comprised by the following specification: In that AIRMAN FIRST CLASS JEFFERSON R. MCFADDEN, United States Air Force, 22d Aircraft Maintenance Squadron, McConnell Air Force Base, Kansas, did, at or near Wichita, Kansas, on or about 15 January 2013, commit an assault upon CR by placing her in reasonable apprehension of being struck with objects likely to produce death or grievous bodily harm to wit: a firearm and a knife. All other findings are affirmed. The findings, as modified, and the sentence, as reassessed, are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred.[11] Articles 59(a) and 66(c), UCMJ. They are accordingly,

**AFFIRMED.**

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court

---

[11] The Court-Martial Order (CMO) contains errors. Charge II is incorrectly numbered and the forfeiture of all pay and allowances is missing from the sentence. We have considered this clerical error and determined it is not prejudicial; however, we order a corrected CMO. Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 10.10 (6 June 2013).